Filed 1/12/15 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----


| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>DRAKE NICHOLAS NOYAN,<br><br>        Defendant and Appellant. | C074049<br><br>(Super. Ct. Nos. CRF121135,<br>CRF121518, CRF122071,<br>CRF130029)<br><br>ORDER MODIFYING<br>OPINION AND DENYING<br>REHEARING<br><br>[NO CHANGE IN<br>JUDGMENT] |


THE COURT:

It is ordered that the opinion filed herein on December 17, 2014, be modified as follows:

1.      On pages 17 and 18, the paragraph under the subheading "C.  Equal Protection Remedies" is modified to read as follows:

> "When a court concludes that a statutory classification violates the constitutional guarantee of equal protection of the laws, it has a choice of remedies."  (*Hofsheier*, *supra*, 37 Cal.4th at p. 1207.)  Here, defendant contends we should order that he serve his sentence in county jail; the Attorney General contends the Legislature would likely prefer us to impose state prison sentences for all related statutes (chapter 3 of title 5 of part 3 of the Penal Code).  "In choosing the proper remedy for an equal protection violation, our primary concern is to ascertain, as best we can, which

1

alternative the Legislature would prefer." (*Hofsheier*, *supra*, 37 Cal.4th at p. 1207, citing *Kopp v. Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 651 and *Hayes v. Superior Court* (1971) 6 Cal.3d 216, 224.) An express purpose in enacting the Realignment Legislation was to "[realign] low-level felony offenders . . . to locally run community-based corrections programs" to decrease recidivism and improve public safety. (§ 17.5, subd. (a)(5).) Therefore, we conclude the Legislature would prefer that section 4573.5 be reformed to make reference to the sentencing provisions of section 1170(h) to further that legislative purpose.

2.      On page 18, part III is added immediately preceding the Disposition, to read as follows:

## III

## Proposition 47

In a petition for rehearing, defendant argues the provisions of Proposition 47, enacted by the people at the November 4, 2014, general election, apply retroactively to this case and reduce his Health and Safety Code section 11350 convictions from felonies to misdemeanors, given that he does not have a disqualifying prior conviction. Defendant is limited to the statutory remedy of petitioning for recall of sentence in the trial court once his judgment is final, pursuant to Penal Code section 1170.18. (See *People v. Yearwood* (2013) 213 Cal.App.4th 161, 170, 177.)

There is no change in the judgment.

Respondent's and appellant's petitions for rehearing are denied.

BY THE COURT:


          RAYE          , P.J.


          NICHOLSON          , J.


          ROBIE          , J.

Filed 12/17/14 (unmodified version)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>DRAKE NICHOLAS NOYAN,<br><br>　　　　Defendant and Appellant. | C074049<br><br>(Super. Ct. Nos. CRF121135,<br>CRF121518, CRF122071,<br>CRF130029) |

APPEAL from a judgment of the Superior Court of Sutter County, H. Ted Hansen, Judge.  Affirmed as modified.

Rachel P. Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein, and Alice Su, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Drake Nicholas Noyan was sentenced to state prison for various drug-related charges pursuant to a negotiated plea.  In his appeal, we consider two claims, one personal to Noyan, that the court abused its discretion in declining to reinstate him on

1

probation, and another with wider implications, that the differing applications of Penal Code section 1170, subdivision (h) (hereafter section 1170(h))[1] to Penal Code sections 4573 and 4573.5[2] violate equal protection by requiring him to serve his sentence in state prison instead of county jail.[3] We reject his probation claim but agree that section 4573.5 treats similarly situated classes of offenders differently, and there is no rational basis for the disparate treatment. We reform the statute to eliminate the constitutionally infirm disparity and modify the judgment accordingly.

## FACTUAL AND PROCEDURAL BACKGROUND

In case No. CRF121135, defendant was charged with felony possession of heroin (count 1) and misdemeanor possession of an opium pipe or other device or paraphernalia used for injecting or smoking a controlled substance (count 2). Defendant pleaded no contest to count 1 and was granted a deferred entry of judgment for an enumerated period, released on his own recognizance, and ordered to report to probation. During the diversion period, defendant violated probation; the court ordered the judgment entered and placed him back on probation. Defendant violated probation again, and the court revoked his probation.

While on bail in that case, defendant was charged in case No. CRF121518 with felony failure to appear at a court hearing. Defendant pleaded no contest; the trial court

---

[1] Section 1170(h) was subsequently amended in 2012. (Stats. 2012, ch. 43, § 27.) However, that amendment did not alter any of the statutory language pertinent to our analysis. Therefore, we refer herein to section 1170(h) without regard to the 2012 amendment because the cited language is the same in the former and the amended section 1170(h).

[2] Undesignated statutory references are to the Penal Code.

[3] Defendant initially claimed ineffective assistance of counsel based on counsel's failure to object to the imposition of a prison sentence but abandoned this contention in his reply brief.

suspended imposition of sentence and placed him on three years' probation. Defendant violated probation, after which probation was revoked and reinstated. Defendant again violated probation and the court again revoked his probation.

In case No. CRF122071, defendant was charged with first degree felony burglary (count 1); possession of heroin (counts 2 & 3); knowingly bringing alcohol, a noncontrolled substance, or paraphernalia intended to be used in the consumption of a noncontrolled substance into county jail (count 4); misdemeanor possession of an opium pipe or other device or paraphernalia used for injecting or smoking a controlled substance (count 5); and misdemeanor graffiti (count 6). Defendant pleaded no contest to counts 2 and 4, and all other counts were dismissed. He did not wish the trial court to consider drug court. The trial court suspended imposition of sentence and placed him on probation for three years. The court revoked probation after defendant violated its terms.

Finally, defendant was charged in case No. CRF130029 with knowingly bringing a controlled substance or paraphernalia intended for consuming a controlled substance into a county jail (count 1) and misdemeanor possession of an opium pipe or device for injecting or smoking a controlled substance (count 2). Defendant pleaded no contest to count 1 and admitted various probation violations.

Pursuant to his plea bargain, the court sentenced defendant to an aggregate term of five years four months in state prison: the upper term of three years for possession of heroin (Health & Saf. Code, § 11350, subd. (a); count 2, case No. CRF122071); a concurrent upper term of three years for bringing paraphernalia for consumption of drugs other than controlled substances into jail (Pen. Code, § 4573.5; count 4, case No. CRF122071); one year (one-third the middle term) for bringing a controlled substance into county jail (Pen. Code, § 4573; count 1, case No. CRF130029); eight months (one-third the middle term) for failure to appear on bail (Pen. Code, § 1320.5; count 1, case No. CRF121518); and eight months (one-third the middle term) for possession of heroin (Health & Saf. Code, § 11350, subd. (a); count 1, case

3

No. CRF121135). The sentence was imposed but execution was suspended, and defendant was placed on three years' probation in each case and ordered to attend the drug court program. Defendant was advised and understood that if he failed drug court or violated any other condition of his suspended sentence, he would be sentenced to state prison.

Defendant violated probation. The court revoked defendant's probation on all matters. Defendant was again advised, and he acknowledged, that if the court determined he should not be reinstated on probation he would be sentenced to five years four months in state prison. Defendant admitted violating his probation by possessing a controlled substance and drug paraphernalia, and by failing to participate in and complete the drug court program.

At a hearing to determine whether to reinstate defendant on probation, defendant testified on his own behalf and also presented the testimony of Joseph Wayne Cassady, D.O., and Donald R. Siggins, Ph.D. Cassady was a treating physician who prescribed defendant Suboxone, which is a medication approved for the treatment of opiate dependency. Cassady explained that if taken as prescribed, Suboxone would reduce an addict's craving, allowing him to feel normal and to avoid symptoms of withdrawal; however, Suboxone is not useful in preventing someone from using opiates if he so chooses. Siggins's evaluation of defendant led him to opine that defendant was a drug addict, that defendant was motivated to change his lifestyle, and that defendant needed long-term residential treatment. Siggins did not believe prison would offer the type of program defendant needed to "turn his life around." Siggins further opined defendant had "hit[] bottom" and was ready to begin recovery. He also testified that his clients who have entered treatment are "by and large successful" but that he could not "predict the future with any absolute certainty." Finally, defendant testified that he had a drug problem he "[d]esperately" wanted to correct, that his "heart [was] set on [rehabilitation]," and that he was willing to and had made efforts to enter a program.

4

Defendant's counsel argued defendant should be reinstated on probation so he could get the help he "wants" and "needs." The prosecutor argued the stay of execution should be lifted and the previous state prison sentence imposed because defendant had failed to comply with probation, and that he had been given "one last chance with a suspended sentence, and he failed to take advantage of that last chance." The court found defendant had a 19-year criminal track record, was fortunate to have been given an opportunity earlier in the year to avoid a prison commitment, and essentially "blew off" the suspended sentence. The court found nothing to justify reinstating probation, and further found that instead of doing what he was supposed to have done while on probation, defendant immediately had gone back to using drugs. Therefore, the court lifted the suspension of defendant's prison sentence and ordered the sentence be executed in each matter. The court clarified, and counsel agreed, that defendant's conviction for a violation of section 4573.5 was not eligible for sentencing to county jail instead of state prison under section 1170(h). Therefore, the court remanded defendant to the custody of the sheriff for delivery to the Department of Corrections and Rehabilitation.

Defendant timely appealed but did not obtain a certificate of probable cause.

## DISCUSSION

### I

### Failure to Reinstate Probation

Defendant contends the trial court abused its discretion in declining to reinstate probation because all of his crimes and probation violations were a result of his chemical dependency. We reject the contention.

" 'A denial or a grant of probation generally rests within the broad discretion of the trial court and will not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary or capricious manner.' [Citation.] A court abuses its discretion 'whenever the court exceeds the bounds of reason, all of the circumstances being considered.' [Citation.] We will not interfere with the trial court's exercise of

5

discretion 'when it has considered all facts bearing on the offense and the defendant to be sentenced.' [Citation.]" (*People v. Downey* (2000) 82 Cal.App.4th 899, 909-910.)

Appellant contends the court should have reinstated probation based on the recommendation of Siggins that defendant should be placed in long-term residential treatment because he was " 'bottoming out' " and would not receive proper drug treatment in prison. The court reviewed defendant's lengthy criminal history, his repeated probation violations, the recommendations of the probation report, the reports and recommendations of Cassady and Siggins, defendant's own testimony, and the arguments of counsel and found that defendant had four separate criminal proceedings initiated against him in the course of one year, and except for the initial case, all involved independent criminal charges that also amounted to violations of defendant's probation in the pending actions. Defendant's repeated failure to comply with the terms of his probation supports the court's conclusion that defendant was no longer a suitable candidate for probation. (*People v. Jones* (1990) 224 Cal.App.3d 1309, 1316.) Therefore, the court's refusal to reinstate probation as recommended by Siggins was not an abuse of discretion.

## II

## Equal Protection

Defendant contends the disparate treatment under section 1170(h) of those convicted under section 4573 (knowingly bringing a controlled substance or paraphernalia for consuming a controlled substance into a custodial facility) and section 4573.5 (knowingly bringing alcohol or noncontrolled substances and paraphernalia for consuming such substances into a custodial facility) violates the equal protection clauses of the United States and California Constitutions because a person convicted of violating section 4573 is eligible to be sentenced to *county jail* whereas a person convicted of violating section 4573.5 is sentenced to *state prison*.

6

We find no rational basis to support the exclusion of section 4573.5 from punishment pursuant to section 1170(h) (i.e., incarceration in county jail instead of state prison) when similarly situated violators of section 4573 are punished pursuant to section 1170(h). Therefore, we find the sentencing scheme for section 4573.5 violates the equal protection clause of the Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution, and we modify defendant's judgment accordingly.[4]

## A. The Relevant Statutes

### 1. The 2011 Realignment Legislation

The Legislature enacted the 2011 Realignment Legislation addressing public safety (Realignment Legislation) to address a fiscal emergency and public safety by "[r]ealigning low-level felony offenders who do not have prior convictions for serious, violent, or sex offenses to locally run community-based corrections programs . . . ." (Stats. 2011, ch. 15, § 229; see *id.* at § 638; see also *People v. Guillen* (2013) 212 Cal.App.4th 992, 995.) "Realignment 'shifted responsibility for housing and supervising certain felons from the state to the individual counties.' [Citation.] Felons eligible to be sentenced under realignment now serve their terms of imprisonment in local custody rather than state prison. [Citations.]" (*People v. Montrose* (2013) 220 Cal.App.4th 1242, 1246.)

---

[4] The absence of a certificate of probable cause generally acts as a bar to a challenge of the validity of a plea. (§ 1237.5, subd. (b); *People v. Smith* (2001) 24 Cal.4th 849, 852; *People v. Panizzon* (1996) 13 Cal.4th 68, 74-78.) And defendant's failure to object to the imposition of the sentence at trial would usually result in a forfeiture of the contention, even where constitutional rights are involved. (See, e.g., *People v. Alexander* (2010) 49 Cal.4th 846, 880, fn. 14; *People v. Burgener* (2003) 29 Cal.4th 833, 860-861, fn. 3.) However, assuming defendant's equal protection argument is correct, the court imposed an unauthorized sentence, which may be corrected at any time. (*Smith, supra,* 24 Cal.4th at p. 852; see also *People v. Karaman* (1992) 4 Cal.4th 335, 348-349 & fn. 15.) Therefore, we address defendant's claim on the merits.

In conjunction with the Realignment Legislation, the Legislature added section 1170(h). (Stats. 2011, ch. 361, §§ 6, 7, 18.) This newly added subdivision provides in pertinent part that "a felony punishable pursuant to this subdivision where the term is not specified in the underlying offense shall be punishable by a term of imprisonment in a county jail for 16 months, or two or three years" (§ 1170(h)(1)) and "a felony punishable pursuant to this subdivision shall be punishable by imprisonment in a county jail for the term described in the underlying offense" (§ 1170(h)(2)). The Legislature simultaneously amended the default sentencing provision, section 18, so that criminal punishment, where not otherwise provided, is in state prison for 16 months, two years, or three years "unless the offense is punishable pursuant to subdivision (h) of Section 1170," in which case, imprisonment is in county jail. (Stats. 2011, ch. 15, § 230.)

### 2. Sections 4573 and 4573.5

As amended by the Realignment Legislation, section 4573 provides that "any person, who knowingly brings . . . into . . . any county . . . jail . . . any controlled substance, . . . any device, contrivance, instrument, or paraphernalia intended to be used for unlawfully injecting or consuming a controlled substance, is guilty of a felony punishable by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years."[5] (Stats. 2011, ch. 15, § 491.) Thus, a person convicted of violating section 4573 is sentenced to county jail for two, three, or four years. (§ 1170(h)(2).) Prior to amendment, those convicted of violating section 4573 could be sentenced to state

---

[5] Related sections 4573.6 (possession of controlled substances or related paraphernalia in a custodial facility) and 4573.9 (selling, furnishing, or administering controlled substances in a custodial facility) were similarly amended to refer to section 1170(h). (Stats. 2011, ch. 15, §§ 492, 493.) Section 4573.6 historically imposed, and currently imposes, two, three, or four years as potential punishment, like section 4573; section 4573.9 has imposed, and continues to impose a sentence of two, four, or six years. (§§ 4573.6, 4573.9; Stats. 2011, ch. 15, §§ 492, 493.)

8

prison for the same term, "two, three, or four years." (Stats. 1990, ch. 1580, § 2, pp. 7554-7555.)

In contrast, section 4573.5 was not amended by the Realignment Legislation; this section continues to provide that "[a]ny person who knowingly brings into any . . . county . . . jail . . . any alcoholic beverage, any drugs, other than controlled substances, in any manner, shape, form, dispenser, or container, or any device, contrivance, instrument, or paraphernalia intended to be used for unlawfully injecting or consuming any drug other than controlled substances . . . is guilty of a felony."[6] Both prior to the Realignment Legislation and now, violators may be sentenced to state prison for 16 months, two years, or three years pursuant to the default sentencing provision of section 18.

In sum, prior to the Realignment Legislation, violations of section 4573.5 were punished *less* severely than violations of section 4573:  16 months, two years, or three years in state prison as opposed to two years, three years, or four years in state prison. Since the enactment of the Realignment Legislation, violations of section 4573.5 are punished *more* severely than violations of section 4573:  16 months, two years, or three years in state prison as opposed to two years, three years, or four years in county jail.[7] It is this disparate treatment that defendant claims violates equal protection principles.

---

[6] Section 4573.8 (possession of drugs, alcohol, or drug paraphernalia in a custodial facility) was not amended by the Realignment Legislation either.  This section imposes the same potential punishment as section 4573.5.  (§§ 18, 4573.8.)

[7] A sentence to county jail is distinctly different from a sentence to state prison.  (*In re Anderson* (1968) 69 Cal.2d 613, 663-664, fn. 15.)  Further, a longer term may be a lesser punishment depending on the type of detention imposed, i.e., county jail or state prison. (See *Ex parte Nichols* (1896) 110 Cal. 651, 653-654 [juvenile detained to reform school for longer term does not receive greater punishment than adult sent to state prison or county jail for lesser term because conditions of detention are so different]; see also *In re Kapperman* (1974) 11 Cal.3d 542, 548 [noting "significant differences between county jails and state prisons with regard to rehabilitation facilities and programs" as identified in *McGinnis v. Royster* (1973) 410 U.S. 263, 270-271 [35 L.Ed.2d 282, 289].)  Finally,

9

**B.    Equal Protection Analysis**

" 'The equal protection guarantees of the Fourteenth Amendment and the California Constitution are substantially equivalent and analyzed in a similar fashion. [Citations.]'  [Citation.]  We first ask whether the two classes are similarly situated with respect to the purpose of the law in question, but are treated differently.  [Citation.]  If groups are similarly situated but treated differently, the state must then provide a rational justification for the disparity.  [Citation.]" (*People v. Lynch* (2012) 209 Cal.App.4th 353, 358.)

**1.    The "Similarly Situated" Requirement**

" 'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.'  [Citations.]" (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1199 (*Hofsheier*).)  This concept " ' "compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." ' [Citation.]" (*In re Eric J.* (1979) 25 Cal.3d 522, 531.)

Defendant contends that persons convicted of violating section 4573.5 are similarly situated to those convicted of violating section 4573 because both crimes involve bringing contraband into a custodial facility.  The Attorney General argues violators of the two sections are not similarly situated because the statutes codify two "different crimes" that involve different elements:  one involves controlled substances, and the other expressly excludes controlled substances.  The California Supreme Court rejected a similar argument in *Hofsheier*.

persons confined in county jail may have their sentences reduced by half if they do not refuse to work or violate any rules or regulations, whereas those sentenced to state prison may only earn sentence credits by working in a qualified program.  (Compare § 4019, subds. (b), (c) with §§ 2931, 2933-2933.2.)  Thus, a two-year term in state prison may be a harsher sentence than a three-year term in county jail.

10

*Hofsheier* involved a claim that the lifetime sex offender registration requirement mandatorily imposed on those convicted of oral copulation with a minor (§ 288a, subd. (b)(1)) and not mandatorily imposed on those convicted of sexual intercourse with a minor (§ 261.5) violated federal and state equal protection principles. (*Hofsheier*, *supra*, 37 Cal.4th at pp. 1199-1200.) The Supreme Court disagreed with the Attorney General's blanket contention that "persons who commit different crimes are not similarly situated," because such an absolute rule would permit the state to "arbitrarily discriminate between similarly situated persons simply by classifying their conduct under different criminal statutes." (*Id.* at p. 1199; see also *Lawrence v. Texas* (2003) 539 U.S. 558, 582-585 [156 L.Ed.2d 508, 528-530].) Instead, the court looked to the prohibited conduct and determined both crimes "concern[ed] sexual conduct with minors" and "[t]he only difference between the two offenses is the nature of the sexual act." (*Hofsheier*, *supra*, 37 Cal.4th at p. 1200.) Therefore, the court concluded violators of the two statutes were " 'sufficiently similar to merit application of some level of scrutiny to determine whether distinctions between the two groups justify the unequal treatment.' (*People v. Nguyen* [(1997)] 54 Cal.App.4th [705,] 715.)" (*Hofsheier*, at p. 1200.)

Here, the two offenses involve knowingly bringing contraband into a custodial facility, and the only distinction between the two offenses is the nature of the contraband brought into the facility, i.e., controlled and noncontrolled substances. We conclude the persons convicted of committing these two crimes are similarly situated and we must determine whether that distinction justifies unequal punishments.

### 2.      *The Rational Relationship Test*

"In resolving equal protection issues, the United States Supreme Court has used three levels of analysis. Distinctions in statutes that involve suspect classifications or touch upon fundamental interests are subject to strict scrutiny, and can be sustained only if they are necessary to achieve a compelling state interest. Classifications based on gender are subject to an intermediate level of review. But most legislation is tested only

11

to determine if the challenged classification bears a rational relationship to a legitimate state purpose." (*Hofsheier*, *supra*, 37 Cal.4th at p. 1200.)  Here, defendant contends "[t]he disparate treatment of sections 4573 and 4573.5 by section 1170 does not survive the rational relationship test."

" ' " '[A] statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge *if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.*' " ' " (*Hofsheier*, *supra*, 37 Cal.4th at pp. 1200-1201.)  "The rationale must be 'plausible' [citation] and the factual basis for that rationale must be *reasonably* conceivable [citation]."  (*Id.* at p. 1201, citing *Warden v. State Bar* (1999) 21 Cal.4th 628, 644-645.)  While "it is irrelevant whether the perceived reason for the challenged distinction actually motivated the Legislature, equal protection 'does require that a purpose may conceivably or "may reasonably have been the purpose and policy" of the relevant governmental decision maker' ([*Nordlinger v. Hahn* (1992) 505 U.S. 1, 15 [120 L.Ed.2d 1]]) and that 'the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational.'  (*Id.* at p. 11.)  Thus, . . . we must undertake ' " ' "*a serious and genuine judicial inquiry* into the correspondence between the classification and the legislative goals" ' " ' [citation] by inquiring whether ' "the statutory classifications are rationally related to the 'realistically conceivable legislative purpose[s]' [citation]". . . and . . . by declining to "invent[] fictitious purposes that could not have been within the contemplation of the Legislature . . . ." ' [Citation.]"  (*Hofsheier*, *supra*, 37 Cal.4th at p. 1201; see also *Newland v. Board of Governors* (1977) 19 Cal.3d 705, 711 (*Newland*) and *Fein v. Permanente Medical Group* (1985) 38 Cal.3d 137, 163.)

### 3.   *Asserted Rational Grounds for the Statutory Distinction*

We now inquire whether there is a rational basis for imposing a state prison sentence on someone, such as defendant, convicted of violating section 4573.5 but

imposing a county jail sentence on someone convicted of violating section 4573. In asserting such a rational basis exists, the Attorney General poses two potential grounds for the distinction: (1) penal institutions are under a greater threat from uncontrolled substances because they are "more readily available, easily concealable, and vastly obtainable" and can come into institutions in "greater quantities and more frequently"; and (2) possession of the controlled substances is already punishable as a crime, so the threat of a state prison term would not be as effective a deterrent as a further jail term, while possession of noncontrolled substances is not otherwise criminal and therefore a prison sentence presents a stronger deterrent factor for those criminals. We find neither posed rationale reasonably conceivable.

The Attorney General first submits that "the Legislature could reasonably assume" that penal institutions are under a greater threat from uncontrolled substances because they are "more readily available, easily concealable, and vastly obtainable" and can come into institutions in "greater quantities and more frequently." The Attorney General cites no evidence supporting this proposition. However, "the absence of empirical evidence does not dictate the result. We must still determine whether the asserted rationale for the statutory distinction at issue rests on 'plausible reasons,' or on 'reasonably conceivable' facts that could provide 'rational' grounds for the classification [citation], and not upon 'fictitious purposes' that the Legislature could not have contemplated [citation]." (*Hofsheier*, *supra*, 37 Cal.4th at p. 1203.) We doubt the Legislature could reasonably assume that a can of beer (not a controlled substance as described in Health & Saf. Code, §§ 11054-11058) is a greater threat to a correctional facility than is a thimble of cocaine (controlled substance pursuant to Health & Saf. Code, §§ 11054, subd. (f)(1), 11055, subd. (b)(4), (6)), nor can we comprehend how it would be easier for a person to conceal a carton of cigarettes (not a controlled substance as described in Health & Saf. Code, §§ 11054-11058) than a joint of marijuana (controlled substance pursuant to Health & Saf. Code, § 11054, subd. (d)(13)). Thus, the Attorney General's speculative proposed

13

rationale appears to be a " 'fictitious purpose[]' " that the Legislature could not have contemplated.

The legislative scheme in place prior to the Realignment Legislation, which punished bringing controlled substances into a correctional facility more severely than uncontrolled substances, lends support to our analysis. (See Stats. 1990, ch. 1580, § 2, pp. 7554-7555 [amending section 4573 to make a violation of that section "punishable by imprisonment in the state prison for two, three, or four years" instead of the 16-month, two-year, or three-year term that previously applied].)[8]  The Legislature at that time declined to similarly increase the punishment for a violation of section 4573.5.  Indeed, as initially proposed, Senate Bill No. 2863 would also have increased the punishment for alcohol and noncontrolled substances to two, three, and four years, but the Legislature explicitly rejected that increase in punishment in a subsequent amendment to the bill. (Compare Sen. Bill No. 2863 (1989-1990 Reg. Sess.) as introduced Mar. 2, 1990, § 2 with Sen. Bill No. 2863 (1989-1990 Reg. Sess.) as amended Apr. 26, 1990, § 2; see also Stats. 1990, ch. 1580, § 3, p. 7555.)  Instead, Senate Bill No. 2863 in its final form was enacted to confront the concern that *drugs* were being brought into prisons by visitors and by employees of the Department of Corrections.  (Assem. Pub. Safety Com., Republican Analysis of Sen. Bill No. 2863 (1989-1990 Reg. Sess.) Aug. 28, 1990, p. 1.)  From this legislative history we must conclude the Legislature considered controlled substances a more abhorrent problem in custodial facilities than alcohol or noncontrolled substances; the Attorney General has presented no empirical data or other evidence to indicate the

---

[8] The provisions of chapter 3 of part 3 of title 5 relating to possessing drugs, alcoholic beverages, and weapons in, or bringing them into, custodial facilities were all added or amended by the Legislature in 1990 so that sections 4573, 4573.6, and 4573.9 contained lengthier enumerated state prison sentences while sections 4573.5 and 4573.8 contained the then default punishment of 16 months, two years, or three years in state prison codified in section 18.  (Stats. 1990, ch. 1580, §§ 2-6, pp. 7554-7557.)

14

Legislature would think any differently now, nor can we perceive any reason the Legislature would so drastically change its perspective.

Further, there is nothing to indicate the Legislature reassessed the comparative threat these two violations imposed when it enacted the Realignment Legislation. Rather, it appears the intent of the Legislature in enacting the Realignment Legislation was to make all felony offenses subject to section 1170(h) unless the offense otherwise specifies imprisonment, which section 4573.5 does not. (See Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 109 (2011-2012 Reg. Sess.) March 17, 2011, p. 2, ¶ 1 ["[T]his bill amends Penal Code section 18 to provide that every offense declared to be a felony where the punishment does not specify imprisonment, as enumerated, shall be punishable pursuant to [subdivision h] in Penal Code section 1170, concerning determinate sentencing."].)[9] Thus, we decline to accept the Attorney General's first proposed rationale.

The Attorney General's second proposed rationale is that a county jail term is a more effective deterrent than state prison to prevent someone from bringing controlled substances into a custodial facility (§ 4573) because possession of those substances is already a criminal offense (see Health & Saf. Code, §§ 11350, 11364), whereas a prison sentence poses a stronger deterrent against bringing otherwise lawfully possessed substances into a custodial setting (§ 4573.5).[10] The Attorney General argues a review of the crimes in title 5 of part 3 of the Penal Code (Offenses Relating to Prisons and Prisoners) evidences a legislative distinction in the application of section 1170(h)

---

[9] Note: Date is the date of the analysis.

[10] We note the punishment for simple possession of a controlled substance is generally a county jail term and not a state prison sentence. (See Health & Saf. Code, § 11350, subds. (a), (b) [possession of a controlled substance punishable "pursuant to subdivision (h) of Section 1170 of the Penal Code"].)

between acts that are lawful outside the custodial setting and acts that are unlawful regardless of the setting such that acts that are lawful outside the custodial setting are punishable in state prison.

We are not persuaded. At the outset, the Attorney General's contention belies logic: how can county jail be a greater deterrent than state prison for some criminal activity (that would be criminal regardless of the setting) but not for other criminal activity (that is only criminal when it happens in a custodial setting)? Further, a comprehensive review of title 5 demonstrates that violent felonies committed in a custodial setting are generally subject to state prison sentences (§§ 4500-4501.1, 4503, 4530, 4532),[11] whereas most nonviolent felonies committed in a custodial setting are punished by county jail sentences (§§ 4502 [possession, manufacture, or attempted manufacture of weapon], 4550 [rescue of prisoner], 4573, 4573.6 [possession of controlled substances or paraphernalia for the consumption thereof], 4573.9 [sale of controlled substances ], 4574 [bringing weapons into custodial facility], 4600 [destruction of jail or prison facility or property]). The only exceptions to this category are sections 4571 [entry into custodial facility or adjacent land by a felon], 4573.5, and 4573.8 [possession of drugs, alcohol, or paraphernalia for the consumption of drugs], which are all punishable in state prison.

Contrary to the Attorney General's analysis, some of the nonviolent felonies punishable in county jail *do* punish conduct that would be lawful outside a custodial setting, e.g., possession, sale, or furnishing of weapons (§§ 4502, 4574), and state prison is a punishment for some conduct that is illegal in any setting (§ 4573.8 [possession of drugs]). Therefore, the Attorney General's proffered rationale that the Legislature uses state prison as a deterrent for crimes not punishable in noncustodial settings and county

---

[11] Though nonviolent escapes from prison are also punishable by a state prison term. (§ 4530, subd. (b).)

16

jail sentences as a deterrent for crimes that are only punishable in custodial settings does not withstand scrutiny.

Based on our analysis, it appears the differences in language between sections 4571, 4573.5, and 4573.8 and the other nonviolent felony offense statutes in title 5 of the Penal Code do not reflect a thoughtful effort to distinguish between different offenses but are simply a legislative oversight. Prior to the Realignment Legislation, the other nonviolent felony statutes included the phrase "in the state prison" while sections 4571, 4573.5, and 4573.8 did not include that phrase. The Realignment Legislation amended sections 4502, 4550, 4573, 4573.6, 4573.9, 4574, and 4600 to replace "in the state prison" with "pursuant to subdivision (h) of Section 1170." Rather than signaling a distinction between these two categories of nonviolent felonies, this was simply a failure of the Legislature in the drafting of the Realignment Legislation to identify sections 4571, 4573.5, and 4573.8 as similar statutes in need of amendment. Such an oversight cannot be supported on any rational basis. (See *Newland*, *supra*, 19 Cal.3d at pp. 712-713 [statutory classification lacking rational relationship to legitimate state purpose violates equal protection even when it results from legislative oversight].)

Accordingly, we find that the disparate application of section 1170(h) to section 4573 and not to section 4573.5 violates the equal protection principles codified in the Fourteenth Amendment of the United States Constitution and in article I, section 7 of the California Constitution.

C.      **Equal Protection Remedies**

"When a court concludes that a statutory classification violates the constitutional guarantee of equal protection of the laws, it has a choice of remedies." (*Hofsheier*, *supra*, 37 Cal.4th at p. 1207.) Here, defendant contends we should order that he serve his sentence in county jail; the Attorney General contends the Legislature would likely prefer us to impose state prison sentences for all related statutes (chapter 3 of title 5 of part 3 of

17

the Penal Code).  "In choosing the proper remedy for an equal protection violation, our primary concern is to ascertain, as best we can, which alternative the Legislature would prefer."  (*Hofsheier*, *supra*, 37 Cal.4th at p. 1207, citing *Kopp v. Fair Pol. Pratices Com.* (1995) 11 Cal.4th 607, 651 and *Hayes v. Superior Court* (1971) 6 Cal.3d 216, 224.)  Here, the Legislature has stated its intent that all felonies lacking specific imprisonment terms be punishable pursuant to section 1170(h).  (See Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 109 (2011-2012 Reg. Sess.) as amended March 17, 2011, p. 2, ¶ 1.)  Therefore, we conclude the Legislature would prefer that section 4573.5 be reformed to make reference to the sentencing provisions of section 1170(h).

## DISPOSITION

The judgment is modified to reflect that defendant's sentence of five years four months is to be served in county jail instead of state prison.  The trial court is ordered to prepare an amended abstract of judgment and to forward a certified copy thereof to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.


                    RAYE            , P. J.


We concur:


      NICHOLSON      , J.


      ROBIE            , J.


18