Filed 11/16/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>JUSTIN CHAPMAN FISHER,<br><br>      Defendant and Appellant. | A161128<br><br>(Napa County<br>Super. Ct. Nos. 19CR002012,<br>19CR001954) |

After a court trial, defendant Justin Chapman Fisher was convicted of five destructive device felonies.[1] Three of those offenses—possession with intent to make a destructive device, public possession of a destructive device, and sale or transportation of a destructive device—were subject to prison sentences served in county jail pursuant to Penal Code[2] section 1170, subdivision (h) (hereafter Realignment Legislation, or section 1170(h)). However, Fisher was also convicted of two felony counts of simple possession of a destructive device, a wobbler offense that is not county jail eligible pursuant to section 1170(h). As a result, the court was required to order that Fisher's entire sentence be served in state prison. (§ 1170.1, subd. (a);

---

[1] Fisher was also convicted of possession or transportation of a machine gun (Pen. Code, § 32625, subd. (a)). That offense is punishable as a prison sentence in county jail and is not a subject of this appeal.

[2] All statutory references are to the Penal Code.

1

Couzens et al., Sentencing California Crimes (The Rutter Group 2021-2022) §11:20, p. 11-52.)

Relying principally on *People v. Noyan* (2014) 232 Cal.App.4th 657 (*Noyan*), Fisher claims the disparate punishment of offenders convicted of the simple possession crime violates constitutional equal protection principles by treating similarly situated classes of offenders differently with no rational basis for the disparate treatment. Following *Noyan's* lead (*id.* at p. 660), we reform the statute to eliminate the constitutional infirmity and modify the judgment accordingly.

## BACKGROUND

Fisher was stopped for reckless driving and his car was searched. Officers found what appeared to be explosive devices, which Fisher said were fireworks, in the trunk. The explosives team arrived and identified three pipe bombs: a capped white PVC pipe with a fuse, a capped black plastic pipe with a fuse, and a red cardboard cylinder with a fuse. The black pipe contained 15 grams of flash powder. Both it and the PVC device would explode if their fuses were lit, possibly causing serious injury to anyone holding them; the cardboard tube would burn and dissipate, probably inflicting a serious burn.

Fisher was arrested and released on bail. The friend who facilitated his bail release found bottles of chemicals in a garage Fisher used and called the police. The police found chemical powders and an AR-15 rifle, with no serial number, capable of accepting a magazine.

The district attorney charged Fisher in an information with possession of a destructive device (three felony counts) (§18710);[3] felony possession of a

_____

[3] For clarity, we will refer to the section 18710 offenses as simple possession to distinguish them from Fisher's other destructive device charges, which we refer to as the 1170(h)-eligible destructive device offenses.

destructive device on a highway (§ 18715, subd. (a)(1); felony possession of materials with the intent to make a destructive device (§ 18720); and felony transportation of a destructive device (§ 18730).[4] Fisher was charged in a separate information with felony possession of a machine gun (§ 32625, subd. (a)) with a special allegation he committed it while on bail.

Fisher waived a jury trial. The court found him guilty of possession with intent to make a destructive device, reckless possession of a destructive device, sale or transportation of a destructive device, two felony counts of simple possession of a destructive device, and possession/transportation of a machine gun. He was sentenced to a total term of four years in state prison, including two eight-month consecutive terms on the section 18710 simple possession convictions. This appeal is timely.

## DISCUSSION

Had Fisher been convicted of the 1170(h)-eligible destructive device offenses but not simple possession, he would have served his prison term locally in county jail. Because the convictions for simple possession precluded that sentence, Fisher argues the statutory disparity violates his right to equal protection. The Attorney General responds that the issue is moot, forfeited, and meritless. We conclude the claims are neither moot nor forfeited and that section 18710's state prison requirement violates the equal protection principles codified in the Fourteenth Amendment of the United States Constitution and in article I, section 7 of the California Constitution.

---

[4] Fisher was also charged with misdemeanor possession of methamphetamine and heroin and an infraction for unregistered motor vehicle. These charges are not relevant to the issues raised in this appeal.

3

## I.  Fisher's Equal Protection Claim is Properly Before This Court.

Before turning to the merits of Fisher's constitutional argument, we briefly address and reject the Attorney General's assertions that it is moot or was forfeited.

The Attorney General argues Fisher forfeited the constitutional claim by not asserting it at sentencing. A claim not asserted in the trial court survives forfeiture if it presents "a pure question of law . . . remediable on appeal by modification of the condition" which "does not have an impact on the same proceedings 'downstream' " and which "presents an important question of law that . . . is likely to be reviewed on the merits by the appellate court." (*In re Sheena K.* (2007) 40 Cal.4th 875, 888.)

"We have . . . created a narrow exception to the waiver rule for ' "unauthorized sentences" or sentences entered in "excess of jurisdiction." ' " (*People v. Smith* (2001) 24 Cal.4th 849, 852.) Because these sentences "could not lawfully be imposed under any circumstance in the particular case" (*People v. Scott* (1994) 9 Cal.4th 331, 354), they are reviewable "regardless of whether an objection or argument was raised in the trial and/or reviewing court." (*People v. Welch* (1993) 5 Cal.4th 228, 235.) We deemed appellate intervention appropriate in these cases because the errors presented "pure questions of law" (*ibid.*), and were " 'clear and correctable' independent of any factual issues presented by the record at sentencing." (*Scott*, at p. 354.) "In other words, obvious legal errors at sentencing that are correctable without referring to factual findings in the record or remanding for further findings are not waivable." (*Smith*, at p. 852.)

This is such a case. While Fisher did not challenge his sentence on equal protection grounds in the trial court, the claim presents "a pure question of law" "remediable on appeal by modification of the [sentence]"

4

which "does not have an impact on the same proceedings 'downstream' " and which "presents an important question of law." (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 888.)

The Attorney General next urges us to deny Fisher's claim as moot because he has served his custodial sentence. "[A] case becomes moot when a court ruling can have no practical effect or cannot provide the parties with effective relief." (*People v. Rish* (2008) 163 Cal.App.4th 1370, 1380.) Here, upon completing his prison sentence,[5] Fisher was subjected to a three-year period of postrelease community supervision that is not imposed on defendants sentenced pursuant to the Realignment Legislation. (§ 3451, subd. (a).)[6] A successful appeal will terminate that condition. In addition, by addressing the constitutional issue we provide a "practical effect" for other defendants in Fisher's position. (See *Rish*, at p. 1380 [addressing technically moot claim raising important recurring issue about scope of trial court's statutory duty].) "A sentence to county jail is distinctly different from a sentence to state prison." (*Noyan, supra,* 232 Cal.App.4th at p. 665, fn. 7.)

---

[5] Fisher represents, and we accept, that he "has already served his prison sentence."

[6] With exceptions not relevant here, section 3451, subdivision (a) provides that "all persons released from prison . . . shall, upon release from prison and for a period not exceeding three years immediately following release, be subject to community supervision provided by the probation department of the county to which the person is being released, which is consistent with evidence-based practices, including, but not limited to, supervision policies, procedures, programs, and practices demonstrated by scientific research to reduce recidivism among individuals under postrelease supervision." (§ 3451, subd. (a).)

## II. Equal Protection Analysis

## A. Legal Principles

Turning to the merits of Fisher's claim, we find no rational basis to deny those convicted of the simple possession offense the benefits of a county jail sentence that the Realignment Legislation affords those convicted of the more serious 1170(h)-eligible destructive device offenses.

" ' "The equal protection guarantees of the Fourteenth Amendment and the California Constitution are substantially equivalent and analyzed in a similar fashion. [Citations.]" [Citation.] We first ask whether the two classes are similarly situated with respect to the purpose of the law in question, but are treated differently. [Citation.] If groups are similarly situated but treated differently, the state must then provide a rational justification for the disparity.' " (*Noyan, supra,* 232 Cal.App.4th at p. 666.)

Where, as here, a disputed statutory disparity implicates no suspect class or fundamental right, "equal protection of the law is denied only where there is no 'rational relationship between the disparity of treatment and some legitimate governmental purpose.' " (*People v. Turnage* (2012) 55 Cal.4th 62, 74, quoting People v. *Heller* (1993) 509 U.S. 312, 320.) "This standard of rationality does not depend upon whether lawmakers ever actually articulated the purpose they sought to achieve. Nor must the underlying rationale be empirically substantiated. ([*Heller*,] at p. 320.) While the realities of the subject matter cannot be completely ignored ([*Heller*,] at p. 321), a court may engage in ' "rational speculation" ' as to the justifications for the legislative choice ([*Heller*,] at p. 320). It is immaterial for rational basis review 'whether or not' any such speculation has 'a foundation in the record.' " (*Turnage*, at pp. 74–75.) To mount a successful rational basis challenge, a party must " 'negative every conceivable basis' " that might

6

support the disputed statutory disparity. (*Heller*, at p. 320; see *Turnage*, at p. 75.) If a plausible basis exists for the disparity, courts may not second-guess its " 'wisdom, fairness, or logic.' " (*Heller*, at p. 319; see *Turnage,* at p. 74; *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 881.)

While "it is irrelevant whether the perceived reason for the challenged distinction actually motivated the Legislature, equal protection 'does require that a purpose may conceivably or "may reasonably have been the purpose and policy" of the relevant governmental decisionmaker' [citation] and that 'the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational.' [Citation.] Thus, . . . we must undertake ' " ' "*a serious and genuine judicial inquiry* into the correspondence between the classification and the legislative goals" ' " ' [citations] by inquiring whether ' "the statutory classifications are rationally related to the 'realistically conceivable legislative purpose[s]' [citation]" . . . and . . . by declining to "invent[] fictitious purposes that could not have been within the contemplation of the Legislature." ' " (*Noyan, supra,* 232 Cal.App.4th at pp. 667–668.)

**B. The Realignment Legislation**

"The Legislature enacted the 2011 realignment legislation addressing public safety (Realignment Legislation) to address a fiscal emergency and public safety by '[r]ealigning low-level felony offenders who do not have prior convictions for serious, violent, or sex offenses to locally run community-based corrections programs . . . .' [Citations.] 'Realignment "shifted responsibility for housing and supervising certain felons from the state to the individual counties." [Citation.] Felons eligible to be sentenced under realignment now serve their terms of imprisonment in local custody rather than state prison. [Citations.]' [Citation.]

7

"In conjunction with the Realignment Legislation, the Legislature added section 1170(h). [Citation.] This newly added subdivision provides in pertinent part that 'a felony punishable pursuant to this subdivision where the term is not specified in the underlying offense shall be punishable by a term of imprisonment in a county jail for 16 months, or two or three years' (§1170(h)(1)) and 'a felony punishable pursuant to this subdivision shall be punishable by imprisonment in a county jail for the term described in the underlying offense' (§ 1170(h)(2)). The Legislature simultaneously amended the default sentencing provision, section 18, so that criminal punishment, where not otherwise provided, is in state prison for 16 months, two years, or three years 'unless the offense is punishable pursuant to subdivision (h) of Section 1170,' in which case, imprisonment is in county jail." (*Noyan, supra,* 232 Cal.App.4th at p. 664.)

The Realignment Legislation made reckless possession or possession on a highway of a destructive device (§ 18715, subd. (a)(1) "punishable by imprisonment pursuant to subdivision (h) of Section 1170 for a period of two, four, or six years" (Stats. 2011, ch. 15, § 531 (Assem. Bill No. 109 (2011-2012 Reg. Sess.) Apr. 4, 2011) and made possession with intent to make a destructive device (§ 18720) and sale or transportation of a destructive device (§ 18730) "punishable by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years." (Stats. 2011, ch. 15, §§ 532, 534 (Assem. Bill No. 109 (2011-2012 Reg. Sess.) Apr. 4, 2011.)

C.   **Section 18710**

Simple possession of a destructive device can either be punished as a misdemeanor by imprisonment in the county jail for a term not to exceed one year, or in state prison. (§ 18710, subd. (b).) "Except in cases where a different punishment is prescribed by any law of this state, every offense

8

declared to be a felony is punishable by imprisonment for 16 months, or two or three years in the state prison . . . ." (§ 18, subd. (a).)

When the Legislature enacted section 1170(h), it did not include section 18710 in the almost 500 statutes it amended in tandem to make them punishable pursuant to it. (See Couzens et al. Felony Sentencing Following Enactment of the Criminal Justice Realignment Act of 2011 (Rutter Group Aug. 2011) <https://www.capcentral.org/criminal/realignment/docs/2011-08-30-Judge-Couzens-Felony-Sentencing-Following-Realignment.pdf> (as of Nov. 16, 2021), pp. 13–18.) Hence, a sentence for a felony conviction of simple possession of a destructive device must be served in state prison and not, unlike the generally longer terms for the 1170(h)-eligible destructive device offenses, in county jail.

**D. Analysis**

Rejecting Fisher's suggestion that the disparity was an "oversight," the Attorney General attempts to "discern a legislative purpose" for it. The Attorney General posits that "a person found in violation of section 18710 is not necessarily similarly situated with a person found in violation of sections 18715, 18720, 18725, 18730, or 18740. And given this broad range of conduct varying widely in seriousness, the Legislature could rationally have decided that the sentencing court should have the discretion under section 18710 to impose a misdemeanor county jail sentence or a felony state prison sentence."

The Attorney General unfortunately does not identify any criteria that may justify the disparities in the statutory punishment for the offenses, but instead describes Fisher's conduct and observes that "the potential for and degree of harm (physical and psychological harm) to Fisher, to the public, and to property was great." Remarkably, the Attorney General begins by reminding us that "Fisher was stopped on the highway" before enumerating

9

the destructive device items found in the car.[7] He warns that one of the items, flash powder, "is highly unstable, 'sensitive to shock, heat, and friction.' " Apparently the Attorney General overlooked the Legislature's decision in the Realignment Legislation to include "reckless[] or malicious[] . . . possession" of any "destructive device or any explosive" "[o]n a public street or *highway*" (italics added)—the conduct he contends warrants state prison—as an 1170(h)-eligible destructive device offense punishable in county jail. (§ 18715, subd. (a)(1).)

Nor does the Attorney General elaborate on his declaration that a person convicted of simple destructive device possession is "not necessarily similarly situated" to one convicted of an 1170(h)-eligible destructive device offense. Instead, he merely speculates without explanation that "the Legislature could rationally have decided the sentencing court should have discretion under section 18710 to impose a misdemeanor county jail sentence or a felony state prison sentence.[8]

---

[7] "[B]ags of labeled flash powder, galvanized pipes (a couple of which had a cap on one side), a cardboard pipe with suspected flash powder inside, and two capped PVC pipes containing large amounts of flash powder (about 300 times over the legal limit distinguishing a firecracker from an explosive."

[8] Contrary to the Attorney General's conjecture, the statutory regimen constrains judicial discretion. The court's order of a section 1203.03 mental health evaluation (which was not completed due to COVID constraints) evidences its recognition that Fisher might have benefitted from continuing the treatment he was receiving in county jail. Fisher had no prior convictions or other history which would have precluded a section 1170(h) county jail sentence where he could have continued that treatment while serving his sentence. The conduct resulting in Fisher's simple possession occurred in a vehicle on the road and could have been charged solely under section 18715, subdivision (a)(1) and, upon conviction, could have been punished with a felony sentence served in county jail. By obtaining the simple possession conviction, the prosecutor achieved his stated purpose—sending Fisher to state prison. The simple possession convictions limited the court's options. To

The Attorney General's failure to provide a persuasive rationale for the disparity does not excuse us from completing our task to " 'undertake " ' " '*a serious and genuine judicial inquiry* into the correspondence between the classification and the legislative goals' " ' " [citation] by inquiring whether " 'the statutory classifications are rationally related to the "realistically conceivable legislative purpose[s]" [citation]' . . . and . . . by declining to 'invent[] fictitious purposes that could not have been within the contemplation of the Legislature.' " ' " (*Noyan, supra,* 232 Cal.App.4th at p. 668.)

In *Noyan* the court began its analysis with "[t]he legislative scheme in place prior to the Realignment Legislation." (*Noyan, supra,* 232 Cal.App.4th at p. 669.) And that provides a logical starting point for our inquiry. Senate Bill No. 1080, "Weapons—Deadly—Nonsubstantive Reorganization of Statutes," "reorganize[d] without substantive change the provisions of the Penal Code relating to deadly weapons." (Stats. 2010, ch. 711 (Sen. Bill No. 1080 (2009-2010 Reg. Sess.) Sept. 30, 2010.) Senate Bill No. 1080 reaffirmed that possession of a destructive device was punishable either as a misdemeanor or in state prison for a term of 16 months, two or three years. (Stats. 2010, ch. 711, § 6 (Sen. Bill No. 1080 (2009-2010 Reg. Sess.) Sept. 30, 2010).)

Both possession of materials with the intent to make any destructive device or explosive and sale or transport of a destructive device were punishable by imprisonment in state prison for two, three or four years. (Stats. 2010, ch. 711, §§ 18720; 18730.) Reckless or malicious possession of a

---

impose a county jail sentence the court had to deem the simple possession charges either misdemeanors or suitable for a probationary sentence— outcomes incompatible with the conduct and the other three felony convictions.

11

destructive device or any explosive on a public street or highway was punishable by imprisonment in the state prison for a period of two, four, or six years. (Stats. 2010, ch. 711 (Sen. Bill No. 1080 (2009-2010 Reg. Sess.) Sept. 30, 2010; § 18715.) Section 18740, which punishes possessing, exploding, or igniting a destructive device with the intent to injure or intimidate a person or to destroy or damage property is punishable by a sentencing triad of three, five or seven years—longer than any of the offenses we have discussed. (Stats. 2010, ch. 711 (Sen. Bill No. 1080 (2009-2010 Reg. Sess.) Sept. 30, 2010; § 18740.)

"From this legislative history we must conclude the Legislature considered" the conduct prohibited by sections 18715, 18720, 18730, and 18740 to be "a more abhorrent problem" than simple possession of a destructive device or explosives under section 18710. (*Noyan, supra,* 232 Cal.App.4th at p. 669.) The Realignment Legislation preserved the triads applicable to the first four provisions, but made them punishable with a prison term served in county jail. (§§ 1170(h),18715, 18720, 18730, and 18740.) Lone among these offenses is simple possession of a destructive device under section 18710, which must be served in state prison rather than county jail. (2011 Realignment Legislation, Stats 2011 ch. 15, §1 (Assem. Bill 109 (2011-2012 Reg. Sess.) Apr. 4, 2011; § 18710.)

We do not "second-guess the wisdom, fairness, or logic of the law" but can discern no "plausible basis exists for the disparity." (*People v. Edwards* (2019) 34 Cal.App.5th 183, 195–196.) Simple possession is a lesser included offense of two of the 1170(h)-eligible destructive device offenses for which Fisher was sentenced, and the third offense was 1170(h) eligible. (*People v. Westoby* (1976) 63 Cal.App.3d 790, 795–796 [simple possession a lesser of recklessly or maliciously possessing a destructive device and explosive];

12

§§ 18715, subd. (a)(1) and 18730 are lesser included offenses of § 18710; see CALCRIM Nos. 2572 and 2574). But for the simple possession conviction he would have served his sentence on the three more serious offenses in county jail. We must conclude, as did the Supreme Court when evaluating another sentencing scheme, "[the Legislature] did not intend a lesser included offense to have potentially harsher penal consequences than the greater offense." (*People v. King* (1993) 5 Cal.4th 59, 69 [since minor convicted of murder is eligible for California Youth Authority, conviction for attempted murder must also be CYA eligible].)

Even more glaring is the anomaly that conviction for exploding or igniting any destructive device or explosive with intent to injure, intimidate or terrify a person or to damage or destroy another's property is punished in county jail, but conviction for the lesser included offense of simple possession requires state prison. (§ 18740; CALCRIM No. 2573; see *People v. Westoby supra*, 63 Cal.App.3d at p. 795.) As observed in *Noyan*, "there is nothing to indicate the Legislature reassessed the comparative threat of these . . . violations when it enacted the Realignment Legislation." (*Noyan, supra*, 232 Cal.App.4th at p. 670.) Absent any contrary statutory history, we conclude, as did the court in *Noyan* (addressing two related nonviolent drug offenses, one section 1170(h)-eligible but not the other): "Based on our analysis, it appears the differences [between the punishment prescribed for simple possession and that for the 1170(h)-eligible destructive device offenses] do not reflect a thoughtful effort to distinguish between different offenses but are simply a legislative oversight." (*Noyan*, at p. 671, see p. 663.)

The incongruity is evident from the application of section 18710 to the conduct it proscribes. The offense is designated as a "wobbler" because it may be reduced from a felony to a misdemeanor (§ 17, subd. (b)), in which case the

13

custodial term is served in county jail. But if, as with Fisher, the court concludes that neither misdemeanor punishment nor probation is appropriate, it must order the defendant confined in state prison notwithstanding that the more serious destructive device offenses may be punished by a jail term.

Nor are the disparities in punishment confined to the custodial term. When sentencing pursuant to section 1170(h), unless contrary to the "interest of justice," "the court . . . shall suspend execution of a concluding portion of the term for a period selected at the court's discretion" to be served as a period of mandatory supervision (§ 1170, subd. (h)(5).) Judges "imposing a term of imprisonment in county jail under section 1170(h) . . . must [except for limited circumstances] suspend execution of a concluding portion of the term to be served as a period of mandatory supervision. . . . Because section 1170(h)(5)(A) establishes a statutory presumption in favor of the imposition of a period of mandatory supervision in all applicable cases, denials of a period of mandatory supervision should be limited." (Cal. Rules of Court, rule 4.415(a).)

The Attorney General acknowledges that "a county jail sentence could include a period of mandatory supervision under section 1170, subdivision (h)(5)," but fails to acknowledge that when imposing mandatory supervision, the court "shall suspend execution of a concluding portion of the term for a period selected at the court's discretion." (§ 1170, subd. (h)(5)(A).) Not only is the suspension of a period of the incarceration term inapplicable to state prison sentences, but, as discussed above (fn. 6, *ante*), state prison custody is followed by the constraints of up to three years of postrelease community supervision. (§ 3451, subd. (a).) We can conceive of no plausible basis for requiring continued supervision of one convicted of simply possessing a

14

destructive device while creating a presumption in favor of early release for those convicted of the more serious offenses, including exploding a destructive device with intent to injure a person or to destroy the property of another. (See *People v. Edwards, supra,* 34 Cal.App.5th at pp. 195–196 [equal protection required that youthful sex offenders be afforded same opportunity for parole hearing provided to juvenile first degree murderers].)

Our analysis compels the conclusion that persons charged with the various destructive device offenses are similarly situated and that there is no " 'realistically conceivable legislative purpose[]' " (*Noyan, supra,* 232 Cal.App.4th at p. 668) to require a state prison sentence for those convicted of possession while affording the benefits of county jail incarceration for the 1170(h)-eligible destructive device offenses. We therefore reach the same conclusion as in *Noyan*: "the disparate application of section 1170(h)" to the conduct punished by section 18710 in contrast to the 1170(h)-eligible destructive device offenses "violates the equal protection principles codified in the Fourteenth Amendment of the United States Constitution and in article I, section 7 of the California Constitution." (*Noyan*, at p. 671.)

**E. Remedy**

" 'In choosing the proper remedy for an equal protection violation, our primary concern is to ascertain, as best we can, which alternative the Legislature would prefer.' [Citations.] An express purpose in enacting the Realignment Legislation was to '[realign] low-level felony offenders . . . to locally run community-based corrections programs' to decrease recidivism and improve public safety." (*Noyan, supra,* 232 Cal.App.4th at pp. 671–672.) Having reviewed the legislative history of both Senate Bill No. 1080 and the Realignment Legislation, we agree with *Noyan* that the proper remedy is to

15

reform the provision, here section 18710, to further this legislative purpose by making its violation punishable under the sentencing provisions of section 1170(h).

## DISPOSITION

The matter is remanded to the trial court with directions to terminate Fisher's postrelease supervision and to modify the judgment consistent with this opinion.

_____

Ross, J.*

WE CONCUR:


_____

Pollak, P.J.


_____

Brown, J.


*A161128 People v. Fisher*

_____

&ast; Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17

Trial Court:      Napa County Superior Court

Trial Judge:      Hon. Monique Langhorne

Counsel:

Spero Law Office, Leah Spero, under appointment by the Court of Appeal, for Defendant and Appellant

Rob Bonta, Attorney General, Lance E. Winters and Michael P. Farrell, Assistant Attorneys General, Louis M. Vasquez, Darren Indermill and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

*A161128 People v. Fisher*

18