Filed 11/4/15  P. v. Motsenbocker CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MATTHEW MOTSENBOCKER,<br><br>    Defendant and Appellant. | D064877<br><br><br><br>(Super. Ct. No. SCD241912) |


APPEAL from a judgment of the Superior Court of San Diego County, Jeffrey F. Fraser, Judge.  Affirmed as modified.

Daniel J. Kessler, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Tami Hennick and Amanda E. Casillas, Deputy Attorneys General, for Plaintiff and Respondent.

Matthew Motsenbocker appeals a judgment following his jury conviction of assault with a deadly weapon, two counts of receiving stolen property, petty theft with

three prior theft convictions, unlawful possession of an access card, and various other offenses described below.  On appeal, Motsenbocker contends the trial court erred by: (1) excluding from evidence a portion of a recorded telephone conversation during which he stated a law enforcement officer had jumped through the vehicle's window and threatened to kill him; (2) sentencing him to a prison term for unlawful possession of an access card because that count was alleged as only a misdemeanor; and (3) imposing and staying a prison prior enhancement rather than striking it.  He also asserts that his sentences for four convictions should be reduced to misdemeanors pursuant to Proposition 47 because the judgment in his case is not yet final.  In Case No. D068122, which we consider with this appeal, we address Motsenbocker's related petition for habeas corpus based on his counsel's purported mistake regarding the maximum sentence that could be imposed for the counts alleged against him, which mistake purportedly caused him to reject a plea offer made by the prosecution.

FACTUAL AND PROCEDURAL BACKGROUND

On July 6, 2012, Nicholas Wayman, a bail enforcement agent, requested the assistance of Deputy U.S. Marshal Don Allie to apprehend Motsenbocker, a fugitive with an outstanding felony warrant for his arrest.  Allie and Deputy U.S. Marshal Kristopher Stephens met Wayman at an apartment complex where Lindsey Hagberg, Motsenbocker's girlfriend, resided.  They saw Hagberg drive away in a white Volvo.

Allie, driving an undercover black Dodge Durango; Stephens, driving an undercover black Dodge Charger; and Wayman, driving a white Kia Optima, followed Hagberg to a shopping center on Balboa Avenue.  Hagberg stopped and spoke with

2

Motsenbocker, who was standing next to a stolen Toyota FJ Cruiser. He got in the stolen vehicle, drove to a nearby cul-de-sac, and parked it there. Hagberg, who followed Motsenbocker to the cul-de-sac, then picked him up in her Volvo.

While Motsenbocker and Hagberg were in the cul-de-sac, Allie and Stephens put on their body armor vests, which identified them as "U.S. Marshals." Both Allie and Stephens also displayed U.S. Marshal badges on their apparel. They then contacted local law enforcement to inform them of what they were doing and to request assistance. Allie, Stephens, and Wayman followed Hagberg when her Volvo left the cul-de-sac. Wayman could not identify the vehicle's passenger because the passenger seat was tilted back low. Allie saw movement in the passenger's seat.

Based on his observations, Allie decided to initiate a traffic stop of the Volvo and activated his vehicle's emergency lights and siren. Stephens also activated his vehicle's emergency lights, but not his siren because he was attempting to communicate on his radio. Both vehicles' emergency lights were red and blue lights located at the top of the front windshield. Their vehicles also had "wigwag" lights in their front headlights that flash in a strobe-like fashion. Wayman heard the siren and saw the flashing lights.

Despite the flashing lights and siren, Hagberg did not stop her vehicle. She knew Motsenbocker had outstanding arrest warrants and thought law enforcement agents were following her in the Dodge Durango. She continued driving from southbound Interstate 805 onto Balboa Avenue, pulled behind a flatbed semi-truck, and maneuvered between that truck and Allie's Durango to the front of the lighted intersection. With his vehicle's lights and siren still activated, Allie drove his vehicle forward to see the driver's side of

3

the Volvo. Hagberg told Motsenbocker she wanted to get out of her vehicle. She then jumped out and walked toward Allie with her hands up in the air. She complied with Allie's command to lie on the ground. Allie then approached the Volvo and saw Motsenbocker move from the front passenger's seat to the driver's seat. Allie ordered Motsenbocker to get out of the vehicle, but he did not comply. Allie reached through the Volvo's open driver's window with his left hand (without his gun drawn) in an attempt to grab the keys and disable it, but Motsenbocker sped off with Allie hanging onto the driver's side of the vehicle. The Volvo accelerated through the traffic light, traveling about 25 miles per hour, and then Stephens heard a pop and saw Allie "go flying across the road." As Motsenbocker drove off in the Volvo, a percipient witness on a nearby sidewalk heard a shot. Allie fell onto the street and rolled into the center median. Motsenbocker continued driving, crossing the center median, heading into oncoming traffic and then crossing back over into westbound traffic, where he then stopped the Volvo. He got out of the Volvo and yelled, "Help me, I've been shot." Stephens arrested Motsenbocker.

Wayman came to Allie's aid, saw Allie's firearm on the road, and secured it. Allie appeared unresponsive, had a gash on his head, and was bleeding. Allie was taken to a hospital, where his condition was diagnosed as an acute intracranial hemorrhage with subdural hematomas, a subarachnoid hemorrhage, a neck strain, scalp lacerations, facial abrasions, bilateral upper extremity abrasions, and a questionable loss of consciousness.

Toxicology tests showed Motsenbocker had ingested methamphetamine within 24 hours of his arrest on July 6, 2012. He also had morphine and codeine in his system,

4

which was indicative of heroin use. After the incident, he told paramedics he had used heroin two hours earlier.

Stephens found a stolen Glock handgun, apparently loaded, on the passenger's seat of the Volvo. Officers found the case for that handgun in the stolen FJ Cruiser Motsenbocker was driving. His DNA profile matched that found on the handgun. Officers also found two knives on the floorboard of the driver's seat of the Volvo.

A consolidated amended information charged Motsenbocker with one count of assault with a deadly weapon (Pen. Code, § 245, subd. (a)),[1] two counts of possession of a firearm by a felon (§ 29800, subd. (a)(1)), one count of unlawful driving or taking a vehicle (Veh. Code, § 10851, subd. (a)), two counts of receiving stolen property (§ 496, subd. (a), two counts of burglary (§ 459), one count of possession of ammunition by a prohibited person (§ 30305, subd. (a)(1)), one count of possession of a forged document (§ 475, subd. (a)), one count of possession of a completed check with intent to defraud (§ 475, subd. (c)), one count of unlawfully acquiring or retaining possession of an access card (§ 484e, subd. (c)), and one count of petty theft with three prior theft convictions (§§ 484, 666). The information also alleged that in committing count 1 Motsenbocker personally inflicted great bodily injury on Allie (§§ 12022.7, subd. (a), 1192.7, subd. (c)(8)) and used a vehicle as a deadly weapon (§ 1192.7, subd. (c)(23)), and he committed the offenses alleged in counts 1 through 12 while he was released from custody on bail (§ 12022.1, subd. (b)). It also alleged he had served a prior prison term

---

[1]     All statutory references are to the Penal Code unless otherwise specified.

(§ 667.5, subd. (b)), had been previously convicted of a serious felony (§ 667, subd. (a)(1)), and had a prior strike conviction within the meaning of the three strikes law (§§ 667, subd. (b)-(i), 1170.12, 668).

At trial, the prosecution presented evidence substantially as described above. In his defense, Motsenbocker presented his testimony that he had acted in self-defense. He stated he was under the influence of drugs on the day of the incident. When he met Hagberg that morning in the parking lot, she was nervous because she saw two black cars following her. Motsenbocker had also seen the two black cars when he was driving the FJ Cruiser. He left the FJ Cruiser at the apartment complex and got in Hagberg's Volvo. Hagberg, driving the vehicle, saw the two black cars again and said, "What the fuck's going on?" As they drove onto the freeway, Motsenbocker could still see the black Dodge Durango behind them. He testified he looked for any sign it was a law enforcement vehicle but did not see any. Because its windows were blacked out, he thought they could be followed by gangsters.

Hagberg said she saw lights and exited the freeway. She was "freaking out" and suddenly slammed on the brakes and jumped out of the Volvo, leaving its driver's side door open and the car in gear. As the car rolled forward, Motsenbocker jumped into the driver's seat to stop the car. Motsenbocker testified he then saw a man reaching for the car keys. The man stated, "I'm going to fucking kill you." When Motsenbocker's foot slipped off the brake, the car could have rolled forward. At that moment, the man shot him. Motsenbocker then pressed the gas pedal to get away because he felt he was in danger. He stopped a short distance later, got out of the car, and laid on the ground,

6

screaming, "I've been shot, I've been shot.  I can't breathe."  Motsenbocker testified that the man (i.e., Allie) did not show him a badge or otherwise identify himself as law enforcement.  He did not try to grab or hit Allie when Allie reached into the car. Motsenbocker knew he had warrants for his arrest, but did not know the FJ Cruiser was stolen.

The jury found Motsenbocker guilty of all the charges.  The jury found true the allegations that in committing count 1 Motsenbocker personally inflicted great bodily injury on Allie (§§ 12022.7, subd. (a), 1192.7, subd. (c)(8)) and used a vehicle as a deadly weapon (§ 1192.7, subd. (c)(23)), and he committed the offenses alleged in counts 1 through 12 while he was released from custody on bail (§ 12022.1, subd. (b)). Motsenbocker admitted he had served a prior prison term (§ 667.5, subd. (b)), had been previously convicted of a serious felony (§ 667, subd. (a)(1)), and had a prior strike conviction within the meaning of the three strikes law (§§ 667, subd. (b)-(i), 1170.12, 668).  On September 20, 2013, the trial court imposed a total prison term of 29 years four months.  Motsenbocker timely filed a notice of appeal.

## DISCUSSION

### I

### *Exclusion of Portion of Recorded Telephone Call*

Motsenbocker contends the trial court erred by excluding from evidence a portion of a recorded telephone conversation during which he stated a law enforcement officer had jumped through the vehicle's window and threatened to kill him.  He argues that evidence should have been admitted pursuant to Evidence Code sections 356 and 791.

7

## A

On direct examination, Motsenbocker testified he did not know who was following him, claiming the vehicles behind him had tinted windows and did not have law enforcement lights, sirens, or exempt license plates. On cross-examination, Motsenbocker denied he told Hagberg she should jump out of the vehicle if she could not handle the situation and denied saying he did not want to go to jail. He also denied knowing the FJ Cruiser he had been driving was stolen. The prosecutor then impeached Motsenbocker with evidence showing he told a friend in a recorded telephone call while he was in jail that "I was going to the stolen FJ Cruiser that we got." He also impeached Motsenbocker with evidence from the same recorded telephone call showing he told his friend: "We got on the freeway and Lindsey started freaking out. I'm like, 'What are you doing?' and she's like, 'Pull over. The sirens'? [¶] . . . [¶] . . . We got off right there at Balboa, fool. . . . I told Lindsey, 'All right. If you can't handle this, jump out and I'll have somebody come pick you up.' "

On redirect, defense counsel sought to question Motsenbocker regarding another statement he made during that recorded telephone call. After the prosecutor objected on hearsay grounds, the trial court discussed the matter with counsel out of the jury's presence, asking whether there was an Evidence Code section 356 issue. Defense counsel instead argued it was a prior consistent statement when Motsenbocker told his friend, "When I closed the door this fool jumped through the window and said, 'I'm going to fucking kill you.' " The prosecutor argued he had not impeached Motsenbocker on that subject and he (Motsenbocker) had remained consistent on it. The court sustained the

8

prosecutor's objection, finding Motsenbocker had not made a prior consistent statement under Evidence Code section 791.

B

*Evidence Code section 356.* Motsenbocker argues the trial court abused its discretion by excluding his proffered portion of his recorded telephone call because it was admissible under Evidence Code section 356, which provides:

> "*Where part of* an act, declaration, *conversation*, or writing is given in evidence by one party, *the whole on the same subject may be inquired into by an adverse party*; when a letter is read, the answer may be given; and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence." (Italics added.)

Assuming arguendo Motsenbocker did not forfeit or waive Evidence Code section 356 as a ground for admission of the proffered statement by not arguing its admission on that basis, we nevertheless conclude the trial court did not err by implicitly concluding it was not admissible on that ground. Evidence Code section 356 is the statutory version of the common law rule of completeness. (*People v. Parrish* (2007) 152 Cal.App.4th 263, 269, fn. 3.) When one party places in evidence one part of a conversation or statement, the other party may place the remainder of that conversation or statement in evidence provided those other statements have some bearing on, or connection with, the admission or declaration in evidence. (Evid. Code, § 356; *People v. Zapien* (1993) 4 Cal.4th 929, 959.) Alternatively stated, for admission under Evidence Code section 356, those other statements must be on the same subject or must be necessary to understand the original statements already admitted. (*People v. Maury* (2003) 30 Cal.4th 342, 419.) We review

9

a trial court's ruling under Evidence Code section 356 for abuse of discretion. (*Parrish*, at p. 274.)

Based on our review of the record, we conclude the trial court did not abuse its discretion by implicitly concluding Evidence Code section 356 did not allow admission of Motsenbocker's proffered statement because that statement was not on the "same subject" as the statements introduced by the prosecutor. The prosecutor impeached Motsenbocker's testimony with his statements in the recorded telephone call that he told his friend he was aware the FJ Cruiser he was driving was stolen and that he was aware law enforcement officers were trying to pull him over. Those statements were unrelated to his subsequent statement that "this fool," presumably referring to Deputy Allie, "jumped through the window" and threatened to kill him. Although Motsenbocker argues his subsequent statement should have been admitted to help show he feared for his life, it did not relate to the same subject as, and was not necessary to understand, the statements introduced by the prosecutor. (Evid. Code, § 356; *People v. Maury*, *supra*, 30 Cal.4th at p. 419.) The court did not abuse its discretion by implicitly concluding the proffered statement was not admissible under Evidence Code section 356. (*People v. Parrish*, *supra*, 152 Cal.App.4th at p. 269 & fn. 3.)

C

*Evidence Code section 791*. Motsenbocker also argues the trial court abused its discretion by not admitting his proffered statement from the recorded telephone call under Evidence Code section 791, which provides:

10

"Evidence of a statement previously made by a witness that is consistent with his testimony at the hearing is inadmissible to support his credibility unless it is offered after:

"(a) Evidence of a statement made by him that is inconsistent with any part of his testimony at the hearing has been admitted for the purpose of attacking his credibility, and the statement was made before the alleged inconsistent statement; or

"(b) An express or implied charge has been made that his testimony at the hearing is recently fabricated or is influenced by bias or other improper motive, and the statement was made before the bias, motive for fabrication, or other improper motive is alleged to have arisen."

Motsenbocker specifically argues his proffered statement should have been admitted under Evidence Code section 791, subdivision (b), to rehabilitate his credibility after the prosecutor attempted to broadly impeach his trial testimony with the portions of the recorded telephone call quoted above. He cites *People v. Kennedy* (2005) 36 Cal.4th 595, in which the court stated: "Evidence Code section 791 permits the admission of a prior consistent statement when there is a charge that the testimony given is fabricated or biased, not just when a particular statement at trial is challenged." (*Id*. at p. 614; *People v. Brents* (2012) 53 Cal.4th 599, 616.)

However, we conclude the trial court did not abuse its discretion by concluding Motsenbocker's proffered statement did not qualify as a prior consistent statement under Evidence Code section 791. Because the prosecutor never questioned the truthfulness of Motsenbocker's statement that Deputy Allie threatened to kill him, his proffered statement did not qualify as a prior consistent statement under Evidence Code section 791, subdivision (b). Specifically, the prosecutor did not expressly or implicitly charge

11

that Motsenbocker's statement regarding Allie's purported threat was recently fabricated or influenced by bias or other improper motive and that statement was made before the bias or improper motive allegedly arose. (Evid. Code, § 791; *People v. Ervine* (2009) 47 Cal.4th 745, 780.) Evidence Code section 791 does not make all prior statements admissible merely because a defendant's general credibility has been attacked during cross-examination. (*Ervine*, at p. 780.) Furthermore, because Motsenbocker made the proffered statement while in jail awaiting trial, the court reasonably could infer he had a motive to lie at the time he made the statement and therefore it was inadmissible under Evidence Code section 791. Accordingly, the court did not abuse its discretion by concluding Motsenbocker's proffered statement was not admissible under Evidence Code section 791.[2] (*People v. Waidla* (2000) 22 Cal.4th 690, 717 [abuse of discretion standard applies to Evid. Code, § 791 rulings].)

---

[2] To the extent Motsenbocker argues the trial court's exclusion of his proffered statement violated his constitutional right to present a defense or to a fair trial, we disagree. A trial court's exercise of its discretion in admitting or excluding evidence does not involve a defendant's constitutional rights absent extraordinary or unusual circumstances. (*People v. Abilez* (2007) 41 Cal.4th 472, 503; *People v. Lawley* (2002) 27 Cal.4th 102, 155.) Because Motsenbocker does not persuade us there are any extraordinary or unusual circumstances in this case, we conclude the court did not violate his constitutional rights by excluding his proffered statement. Furthermore, because we conclude the court did not err by excluding that evidence, we need not, and do not, decide whether exclusion of that evidence was prejudicial to Motsenbocker.

## II

### *Count 11 Sentence*

Motsenbocker contends the trial court erred by sentencing him to a prison term for unlawful possession of an access card (count 11) because that count was alleged as only a misdemeanor.

### A

The unlawful possession of an access card with intent to defraud is generally considered a form of petty theft. (§ 484e, subd. (c).) Petty theft is a misdemeanor crime, for which a felony sentence may be imposed when a defendant has previously been convicted of the same or another listed theft-related offense. (§§ 490, 666.) "Section 666 does not establish a separate substantive offense of petty theft with a prior conviction. It is a discretionary sentencing statute which, upon the establishment of a qualifying prior conviction, allows the trial court to punish petty theft as either a felony or a misdemeanor." (*People v. Robinson* (2004) 122 Cal.App.4th 275, 281.) That statute does not establish a sentence enhancement, but rather an alternate and elevated penalty for a petty theft conviction when a recidivist defendant has served a prior term for a listed offense. (*Ibid.*) Therefore, *Robinson* concluded: "[S]ection 666 need not be specifically pleaded in the information or indictment." (*Id*. at pp. 281-282.)

### B

Count 11 of the consolidated amended information in this case charged Motsenbocker with violating section 484e, subdivision (c). In the charge summary of the consolidated amended information, that charged offense was listed as a misdemeanor

13

with a maximum sentence of six months in jail. The consolidated amended information also listed all of Motsenbocker's prior offenses, including four prior burglary offenses and a receipt of stolen property offense. However, it did not expressly refer to section 666.

During trial, Motsenbocker admitted he had three or more theft-related crimes within the meaning of section 666. He further admitted he had previously been convicted of multiple counts of burglary (§ 459) and feloniously receiving stolen property (§ 496, subd. (a)). The jury found Motsenbocker guilty of count 11 as charged in the information.

## C

Although section 666 does not require that it be specifically pleaded in the information, *People v. Tardy* (2003) 112 Cal.App.4th 783 stated the information must apprise "the defendant of the potential for the enhanced penalty and allege every fact and circumstance necessary to establish its applicability." (*Id*. at p. 787.) In the circumstances of that case, *Tardy* stated: "[T]here is no due process requirement to specify section 666 when that enhancement relates solely to the unpleaded (but constitutionally noticed) lesser included offense and every fact necessary to establish section 666 is subsumed in the prior conviction/prison enhancement allegations set forth in the accusatory pleading." (*Id*. at p. 788.)

We conclude the circumstances in this case are factually apposite to those in *Tardy* regarding the section 666 issue. Here, the consolidated amended information alleged Motsenbocker's prior theft-related offenses that qualified him for sentencing under section 666, and he admitted he had been previously convicted of three or more of those

14

offenses within the meaning of section 666.  Because the information gave him adequate notice he could receive a felony sentence on count 11, the court did not err by imposing a term of one year four months for his conviction on that count.  (Cf. *People v. Tardy*, *supra*, 112 Cal.App.4th at p. 788.)

D

Motsenbocker alternatively argues he was denied effective assistance of counsel when his counsel did not object to the trial court's imposition of a felony sentence for his conviction on count 11.[3]  However, as the People assert, his counsel did not perform deficiently because he was not required to make frivolous objections, such as the one Motsenbocker now asserts should have been made.  (*People v. Westoby* (1976) 63 Cal.App.3d 790, 799.)  Here, an objection to his sentencing under section 666 would have been frivolous because the information listed his prior offenses that qualified him for sentencing under section 666 and he stipulated he had been convicted of three or more theft-related offenses within the meaning of section 666.  Because, based on this record, the trial court presumably would have overruled any objection by Motsenbocker's counsel to sentencing under section 666, any such objection would have been frivolous and therefore his counsel did not perform deficiently.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687-689; *Westoby*, at p. 799.)  Furthermore, Motsenbocker similarly has

---

3    In Case No. D068122, which we consider with this appeal, we address Motsenbocker's related petition for habeas corpus based on other purported deficient performance by his counsel (i.e., a mistake regarding the maximum sentence that could be imposed for the counts alleged against him, which mistake purportedly caused him to reject a plea offer made by the prosecution).

15

not shown he was prejudiced by his counsel's purported deficient performance (i.e., that the trial court would not have imposed a felony sentence for count 11 under § 666 had his counsel objected to such sentencing). (*Strickland*, at p. 694.) He has not carried his burden on appeal to show his constitutional right to effective assistance of counsel was violated when his counsel did not object to his sentencing on count 11 under section 666.

III

*Section 667.5, Subdivision (b), Enhancement*

Motsenbocker contends, and the People agree, that the trial court erred by imposing and staying the section 667.5, subdivision (b), enhancement for a prior prison term rather than striking it. At trial, he admitted he had previously been convicted of a serious felony within the meaning of section 667, subdivision (a)(1), and a prison prior under section 667.5, subdivision (b). At sentencing, the trial court imposed the section 667, subdivision (a)(1), enhancement, and then imposed but stayed the section 667.5, subdivision (b), enhancement, which was based on the same prior conviction. However, the court lacked authority to stay the section 667.5, subdivision (b), enhancement. "Once [a] prior prison term is found true within the meaning of section 667.5(b), the trial court may not stay the one-year enhancement, which is mandatory unless stricken." (*People v. Langston* (2004) 33 Cal.4th 1237, 1241.) Because the trial court could not impose both a prior serious felony enhancement and a prior prison term enhancement based on the same underlying conviction, it should have stricken, rather than stayed, the section 667.5, subdivision (b), enhancement. (*People v. Jones* (1993) 5 Cal.4th 1142, 1146-1153; *People v. Perez* (2011) 195 Cal.App.4th 801, 805.) By not doing so, the court erred.

16

## IV

### *Proposition 47*

Motsenbocker contends he should be resentenced on counts 4, 11, 12, and 13 because Proposition 47 (Prop. 47), effective on November 5, 2014, applies retroactively and therefore those pre-Prop. 47 convictions must be automatically sentenced as only misdemeanors and not felonies. The People agree that Motsenbocker's four convictions qualify for resentencing as misdemeanors under Prop. 47. However, they assert that because Prop. 47 does not apply retroactively and he was currently serving a sentence for a felony conviction at the time Prop. 47 became effective, he must file a petition for recall of his sentence after his judgment is final and allow the trial court to determine whether he is, in fact, eligible for resentencing under Prop. 47. We agree with the People.

### A

Prop. 47 created section 1170.18, providing a new statutory remedy for "[a] person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under [Prop. 47] had this act been in effect at the time of the offense . . . ." (§ 1170.18, subd. (a).) Section 1170.18, subdivision (a), provides such a person "may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing in accordance with . . . Section . . . 490.2, 496, or 666 of the Penal Code, as

17

those sections have been amended or added by this act."[4]  Section 1170.18, subdivision

(b), provides:

> "Upon receiving a petition under subdivision (a), the court shall determine whether the petitioner satisfies the criteria in subdivision (a).  If the petitioner satisfies the criteria in subdivision (a), the petitioner's felony sentence shall be recalled and the petitioner resentenced to a misdemeanor pursuant to . . . Section  . . . 490.2, 496, or 666 of the Penal Code . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety."

B

Citing *In re Estrada* (1965) 63 Cal.2d 740, Motsenbocker argues that because his

judgment is not yet final and Prop. 47 does not contain any savings clause, Prop. 47

operates retroactively to automatically reduce the punishment for his convictions on

counts 4, 11, 12, and 13 to misdemeanor sentences and he is not required to file in the

trial court a petition to recall his sentence under section 1170.18.  He also argues the

voters intended that Prop. 47's provisions retroactively apply to nonfinal judgments.  We

disagree.

Based on our review of section 1170.18 and giving its words their ordinary and

usual meaning (*People v. Park* (2013) 56 Cal.4th 782, 796), we conclude its language is

unambiguous that a defendant, such as Motsenbocker, serving a sentence for a Prop. 47

qualifying offense when Prop. 47 became effective (i.e., on November 5, 2014) may

---

4      For example, Prop. 47 amended section 496 to provide punishment for possession of stolen property only as a misdemeanor if the value of the property does not exceed $950.  (§ 496, subd. (a).)

18

petition for a recall of his or her sentence and request resentencing under Prop. 47, and that any resentencing under Prop. 47 must be effected in that manner.  Because its provisions are clear, there is no issue regarding Prop. 47's retroactivity.  In any event, we agree with other courts that Prop. 47's provisions do not apply retroactively.  (See, e.g., *People v. Shabazz* (2015) 237 Cal.App.4th 303, 310-314; *People v. Noyan* (2014) 232 Cal.App.4th 657, 672.)  Accordingly, to obtain relief under Prop. 47, Motsenbocker must file a petition for recall of his sentence under Prop. 47 once the judgment is final and jurisdiction of the case has been returned to the trial court.

## DISPOSITION

The judgment is modified to strike the section 667.5, subdivision (b), enhancement.  In all other respects, the judgment is affirmed.  The clerk of the trial court shall file an amended abstract of judgment reflecting that modification and forward a copy to the Department of Corrections and Rehabilitation.

McDONALD, J.

WE CONCUR:

McCONNELL, P. J.

HUFFMAN, J.

19