Filed 11/12/15  P. v. Limpin CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D067058 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD248200) |
| MELCHOR KARL LIMPIN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Michael T. Smyth, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Lynelle K. Hee, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

In January 2014 Limpin pleaded guilty to possession of methamphetamine for sale (Health & Saf. Code, § 11378) and possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)).  The People agreed to dismiss the sales charge if at sentencing Limpin showed proof he had completed an outpatient drug treatment program and courses making him suitable to take the certified public accountant examination.

At the sentencing hearing on November 5, 2014, the court suspended the imposition of sentence and granted Limpin formal probation for three years on condition he serve 365 days in county jail with 445 days credit for time served.  The court imposed various fines and fees.

Limpin raises two contentions on appeal.  First, he contends that under the amendments to Health and Safety Code section 11377, subdivision (a), enacted by voter approval of The Safe Neighborhoods and Schools Act (Proposition 47) in early November 2014, this court is required to reduce his felony conviction of possession of methamphetamine to a misdemeanor and remand the matter for resentencing.  Second, he contends this case must be remanded to the superior court with directions to use his excess custody credits to reduce his punitive fines on a proportional basis.  The Attorney General agrees with Limpin's second contention.

We reject Limpin's first contention but conclude this case must be remanded to the superior court with directions to use his excess custody credits to reduce his punitive fines on a proportional basis.

## DISCUSSION[1]

### I. *PROPOSITION 47*

Limpin contends that under the amendments to Health and Safety Code section 11377, subdivision (a), this court must reduce his felony conviction of possession of methamphetamine to a misdemeanor. He also contends he is automatically entitled to resentencing because his case was not final when Proposition 47 became effective and, thus, the amendments apply retroactively to him and he is not required to utilize the resentencing petition procedure established in Penal Code section 1170.18.

The People do not dispute Limpin may be eligible for resentencing, but assert that "[b]ecause [he] was serving a sentence for a felony conviction at the time Proposition 47 became effective, he must file a petition for recall of sentence [under section 1170.18] after his judgment is final so the trial court can determine if he is eligible for misdemeanor resentencing under Proposition 47." We agree with the People.

### A. *Proposition 47*

On November 4, 2014, California voters approved Proposition 47. (Ballot Pamp., Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 1, p. 70.) It became effective the next day (Cal. Const., art. II, § 10, subd. (a)), November 5, 2014, the day Limpin was sentenced.

Among other things, Proposition 47 amended Health and Safety Code section 11377. Prior to the amendment, possession of a controlled substance in violation of

---

[1] Because the underlying facts of this case are not pertinent to the issues raised in this appeal, we need not summarize them.

3

Health and Safety Code section 11377, subdivision (a), was punishable as either a felony or a misdemeanor. (*People v. Lynall* (2015) 233 Cal.App.4th 1102, 1108 (*Lynall*).)

As a result of the amendment, possession of a controlled substance is now punishable as a misdemeanor "unless the defendant 'has one or more prior convictions' for an offense specified in Penal Code[2] section 667, subdivision (e)(2)(C)(iv)─which lists serious and violent felonies that are sometimes referred to as '"super strike" offenses'─or for an offense that requires the defendant to register as a sex offender under section 290, subdivision (c)." (*Lynall, supra,* 233 Cal.App.4th at pp. 1108-1109.)

"Proposition 47 also created a new resentencing provision─section 1170.18. Under section 1170.18, a person 'currently serving' a felony sentence for an offense that is now a misdemeanor under Proposition 47, may petition to recall that sentence and request resentencing. (§ 1170.18, subd. (a).) A person who satisfies the statutory criteria shall have his or her sentence recalled and be 'resentenced to a misdemeanor . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.' (*Id*. subd. (b).)" (*Lynall, supra,* 233 Cal.App.4th at p. 1109.)

B. *Analysis*

Limpin relies on the rule of retroactivity in *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*). "Under that rule, a legislative amendment that lessens criminal punishment is presumed to apply to all cases not yet final (the [enacting legislative body] deeming its

---

2    All further statutory references are to the Penal Code unless otherwise specified.

former penalty too severe), unless there is a 'saving clause' providing for prospective application." (*People v. Smith* (2015) 234 Cal.App.4th 1460, 1465, italics omitted; *People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1195-1196 [courts assume, absent contrary evidence, the legislative body intended that an amended statute reducing punishment for a particular offense apply to all defendants whose judgments are not yet final on the operative date of the amended statute].)

Here, the parties do not dispute Proposition 47 lessens punishment and does not contain an express savings clause. However, our inquiry does not end here. We must also consider whether there are any other indicia of a legislative intent by the electorate for Proposition 47 to apply prospectively, rather than retroactively. (*People v. Nasalga* (1996) 12 Cal.4th 784, 793 [amendments that mitigate punishment should be applied retroactively "in the absence of a saving clause or other indicia of a contrary legislative intent"].) "'[W]hat is required is that the [enacting legislative body] demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it.'" (*Ibid.*)

"[O]ur interpretation of a ballot initiative is governed by the same rules that apply in construing a statute enacted by the Legislature." (*People v. Park* (2013) 56 Cal.4th 782, 796.) When we interpret a statute, "our goal is ''to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.'''" (*People v. Albillar* (2010) 51 Cal.4th 47, 54-55.) Thus, as Proposition 47 was enacted by the electorate, it is the voters' intent that controls. (See *Park*, at p. 796.) We first examine the words of the statutory language added or amended

5

by the ballot initiative, """giving them their ordinary and usual meaning and viewing them in their statutory context, because the statutory language is usually the most reliable indicator of legislative intent.""" (*Albillar*, at p. 55.) If the language is ambiguous, we examine other indicators of the voters' intent, particularly the analysis and arguments contained in the official ballot pamphlet. (*People v. Briceno* (2004) 34 Cal.4th 451, 459.) However, """[i]f the language . . . is not ambiguous, the plain meaning controls and resort to extrinsic sources to determine the [electorate's] intent is unnecessary.""" (*Albillar*, at p. 55.) "Once the electorate's intent has been ascertained, the provisions must be construed to conform to that intent." (*Park*, at p. 796.)

We are persuaded the language of Proposition 47 states with the requisite clarity the electorate's legislative intent for prospective, not retroactive, application. Section 3 of the ballot pamphlet, which is labeled "Purpose and Intent," states:

> "In enacting this act, it is the purpose and intent of the people of the State of California to: [¶] . . . [¶] (4) Authorize consideration of resentencing for anyone who is currently serving a sentence for any of the offenses listed herein that are now misdemeanors. [¶] (5) Require a thorough review of criminal history and risk assessment of any individuals before resentencing to ensure that they do not pose a risk to public safety." (Ballot Pamp., Gen. Elec., *supra,* text of Prop. 47, § 3, p. 70.)

Together, these two paragraphs indicate a legislative intent not to permit the automatic application of Proposition 47 to anyone currently serving a sentence for a listed offense. Instead, they indicate a legislative intent to authorize and allow resentencing only for those individuals whose criminal history and risk assessment warrant it.

6

Our interpretation of the electorate's intent is consistent with the Legislative Analyst's analysis of Proposition 47. The analysis stated:

> "This measure allows offenders currently serving felony sentences for the above crimes to *apply* to have their felony sentences reduced to misdemeanor sentences. . . . However, no offender who has committed a specified severe crime could be resentenced or have their conviction changed. In addition, the measure states that a court is not required to resentence an offender currently serving a felony sentence if the court finds it likely that the offender will commit a specified severe crime." (Ballot Pamp., Gen. Elec., *supra,* analysis of Prop. 47 by legislative analyst, p. 36, italics added.)

Our interpretation of the electorate's intent is also consistent with the ballot arguments. The opponents of the initiative measure argued the measure was "an invitation for disaster" in part because it would make "10,000 felons . . . eligible for early release." (Ballot Pamp., Gen. Elec., *supra*, rebuttal to argument in favor of Prop. 47, p. 38; see also argument against Prop. 47, p. 39.) The proponents of the initiative responded by arguing that "Proposition 47 does not require automatic release of anyone. There is no automatic release. It includes strict protections to protect public safety and make sure rapists, murderers, molesters and the most dangerous criminals cannot benefit." (Ballot Pamp., Gen. Elec., *supra*, rebuttal to argument against Prop. 47, p. 39.)

Given the electorate's legislative intent not to automatically apply Proposition 47 to persons currently serving sentences for listed offenses, Limpin has not shown, and cannot demonstrate, that Proposition 47 applies retroactively to him. Instead, to be considered for resentencing to reduce his count 3 felony conviction to a misdemeanor, he must utilize the procedure specified in section 1170.18. (*People v. Noyan* (2014) 232 Cal.App.4th 657, 672.)

7

## II  *EXCESS CUSTODY CREDITS*

Limpin contends, and the Attorney General agrees, this case must be remanded to the superior court with directions to use his excess custody credits to reduce his punitive fines on a proportional basis.  The parties are correct.

At sentencing, the court ordered Limpin to serve 365 days in jail, awarded him 445 days of custody credits, and imposed several fines and fees.  The court mistakenly concluded it did not have discretion to use the excess 80 days of credits to reduce the fines.

Section 2900.5, subdivision (a) provides in pertinent part:

> "In all felony and misdemeanor convictions . . . when the defendant has been in custody, including . . . any time spent in a jail, . . . all days of custody of the defendant, including days served as a condition of probation in compliance with a court order, credited to the period of confinement pursuant to Section 4019, . . . shall be credited upon his or her *term of imprisonment*, or credited to any fine, including, but not limited to, base fines, on a proportional basis, that may be imposed*,* at the rate of not less than thirty dollars ($30) per day . . . .  In any case where the court has *imposed* both *a . . . jail term of imprisonment* and a fine, any days to be credited to the defendant shall first be applied to the *term of imprisonment imposed*, and thereafter the remaining days, if any, shall be applied to the fine, including, but not limited to, base fines, on a proportional basis." (Italics added.)

Subdivision (c) of section 2900.5 provides in pertinent part:

> "For the purposes of this section, '*term of imprisonment*' *includes any period of imprisonment imposed as a condition of probation* or otherwise ordered by a court in imposing or suspending the imposition of any sentence . . . ."  (Italics added.)

As explained in *People v. McGarry* (2002) 96 Cal.App.4th 644, the monetary credit—calculated at the minimum statutory rate of $30 per day of credit (§ 2900.5, subd.

(a))─resulting from excess presentence custody credit must be used to reduce fines on a proportional basis. (*Id*. at p. 646.) However, section 2900.5 only applies to a defendant's court-ordered payment of monies that is punitive; it does not apply to a court-ordered payment of monies for nonpunitive purposes. (*People v. Robinson* (2012) 209 Cal.App.4th 401, 406-407.)

Accordingly, we conclude this case must be remanded with directions that the court use Limpin's excess credits to reduce his punitive fines on a proportional basis.

DISPOSITION

The portion of the judgment ordering Limpin to pay punitive fines is reversed. In all other respects the judgment is affirmed. The matter is remanded to the superior court with directions to use Limpin's excess custody credits to reduce his punitive fines on a proportional basis.

NARES, J.

WE CONCUR:

McCONNELL, P. J.

McDONALD, J.

9