Filed 2/16/16  P. v. Grayson CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C073803 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F06863) |
| v. | |
| WILLIAM GRAYSON, | |
| Defendant and Appellant. | |

Appointed counsel for defendant William Grayson has filed an opening brief that sets forth the facts of the case and requests that this court review the record and determine whether there are any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436.)  Defendant has filed a supplemental brief, claiming (1) that his speedy trial rights were violated due to continuances of his trial requested by his counsel and granted over his objection, (2) counsel wrongly filed a motion to suppress evidence, and (3) insufficient evidence was offered at trial to prove his identity.  Subsequently, we

1

permitted counsel to file a supplemental brief, contending defendant's prior prison term sentencing enhancements must be stricken. After this case took a brief detour to the California Supreme Court, we received further briefing from counsel on the enhancements. As we explain, we find defendant's claims unpersuasive and fail to find any arguable error that would result in a disposition more favorable to defendant. Accordingly, we again affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A jury found defendant guilty of evading a pursuing peace officer while operating a motor vehicle. (Veh. Code, § 2800.2, subd. (a).) The trial court found that he had a prior serious felony conviction (Pen. Code, §§ 667, subds. (b)-(i), 1170.12)[1] and had served six prior prison terms (§ 667.5, subd. (b)). The court denied his motion to dismiss the prior serious felony allegation (§ 1385; *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497) and sentenced him to prison for 12 years, consisting of twice the upper term of three years plus six years for the prior convictions. He was awarded 212 days of actual custody credit and 212 days of conduct credit (§ 4019) and was ordered to pay various fines and fees. Pursuant to a request from appellate counsel, the trial court struck previously imposed booking and classification fees.

The evidence presented to the jury included the following:

On October 11, 2012, around 9:11 p.m., Sacramento Police Officer Christopher Shippen was on duty, driving and looking for a specific person other than defendant. The person and defendant had the same "basic characteristics" in that they were white males with short hair and the same average build.

Shippen saw a male driving a motorcycle, wearing dark clothes, a long-sleeved heavy sweatshirt or jacket, dark blue jeans, black and white shoes with a distinctive

---

[1] Further undesignated statutory references are to the Penal Code.

camouflage pattern, and a black helmet.  The motorcyclist was a white male with short hair that did not extend below the helmet.  Above the collar line of the motorcyclist's shirt was a distinctive black ink tattoo that emerged from the shoulder blades toward the center of the neck and extended three to four inches above the collar.  Shippen got "a decent look" at the motorcyclist when the patrol car was parallel to the motorcyclist and its headlights illuminated the motorcyclist's body.

Shippen followed the motorcycle, ultimately with lights and sirens after the driver violated numerous traffic laws with Shippen in pursuit.  Finally, the street the two were driving on came to a dead end at railroad tracks.  The motorcyclist followed the tracks across the railroad bridge over Highway 160 and proceeded to the north side of the American River.  Because Shippen could not follow the motorcyclist over the railroad bridge in his patrol car, a helicopter followed the motorcyclist.  Shippen drove to the location where the helicopter was hovering near the now-abandoned motorcycle.  Other officers were also gathering at this location, including Officer Steven Thompson and his police dog Crash.  It was about 9:15 p.m.  Shippen described the motorcyclist for Thompson.

Crash started barking, an indication that he was "smelling a bad guy," and Thompson announced the dog's imminent deployment.  Crash "took off" toward the river, tracking ground and air scents associated with stress and perspiration.  Crash jumped into the river, swam approximately 10 yards, returned to shore, located a shirt at the waterline, and tore at it violently to indicate that it was the suspect's shirt.

After Thompson retrieved the shirt from Crash's mouth, the duo continued to follow the scent.  Crash led Thompson along a small bike trail through a wooded area about 100 yards from the shoreline.  Then Officer Thompson heard Crash growling and a male voice screaming or yelling.  Crash had located defendant, who was in a sleeping bag that covered most of his lower body.  The canine pursuit lasted 40 minutes.  Shippen identified defendant as the motorcyclist he had been pursuing, testifying that he

3

recognized defendant's build, short hair, neck tattoo, and distinctive camouflage shoes by brand, pattern, and color. Defendant was wet; his shirt and pants were "saturated." The sleeping bag defendant was found in was also "completely wet."

After being advised of his constitutional rights, defendant admitted to Shippen that the motorcycle was his. He said that he had bought it, and it had not been stolen. The jury saw the videotape (recorded by the patrol car's camera) of defendant's conversation with Shippen.

Defendant testified that on the day of the incident he was on a bicycle, not a motorcycle. He had partied with friends at the river for about two hours. Then he had bathed in the river before going to sleep in his sleeping bag. He awoke to a dog biting him repeatedly. He was drunk and shaken from the canine attack when he talked to Shippen about the motorcycle, and he had thought they were talking about a bicycle.

Defendant called a witness that corroborated his testimony, saying he had been with defendant at the river that entire evening. The witness had never seen defendant on a motorcycle. The witness acknowledged that, sometime after defendant's arrest, he too was arrested and had discussed the incident at issue with defendant while they were in jail together.

## DISCUSSION

### I

*Right to Speedy Trial*

A. *Background*

At the preliminary examination on December 27, 2012, defendant was represented by Assistant Public Defender Alina Mendez. After the complaint was deemed an information and defendant pleaded not guilty, the court clerk noted that the 60th day

(§ 1362, subd. (a)) was February 25, 2013.[2] Trial was set for February 19, and later reset to February 21.

On February 21, defendant was represented by Assistant Public Defender John Buchholz who asserted defendant's desire for a speedy trial and refusal to waive time. Counsel indicated that he would be in trial on other matters and asked that this case trail to February 25 (the 60th day) to allow for the possibility of reassigning the case to another attorney who could try it that day. The trial court denied the request, explaining that any new attorney would need time to get prepared, and found good cause to continue the case to March 4. Defendant made a *Marsden*[3] motion in which he raised the issue of a speedy trial. The motion was denied.

Court proceedings resumed on March 4. Counsel for both parties noted that the defense had filed a motion to suppress evidence and requested a continuance to March 15 for the suppression hearing and to March 20 for trial. Defendant personally objected and emphasized that he was demanding a speedy trial and was not agreeing to waive time. Defendant's counsel responded that there was good cause for continuance in that the suppression motion had resulted from recently obtained discovery and the prosecution requested time to respond in writing. The trial court acknowledged defendant's "very strong objection" but found good cause for continuance until March 19.

On March 19, an attorney from the public defender's office appeared and represented that Buchholz was in a jury trial, requesting good cause be found to continue defendant's trial to March 26--Buchholz's first available date. The trial court again noted defendant's strong objection, found good cause, and continued the trial.

---

[2] All unspecified dates in this part of the Discussion are to 2013.

[3] *People v. Marsden* (1970) 2 Cal.3d 118.

On March 26, Buchholz represented that he had just been assigned another trial and that his first available date would be April 4, announcing that date as "[z]ero of ten." (§ 1382, subd. (a)(3)(B).)

On April 4, another attorney from the public defender's office appeared for Buchholz, and requested to trail defendant's trial to April 11--day seven of 10. The trial court granted that request. The trial actually started on April 15. Defendant personally objected to the case going forward and specifically objected to the findings of good cause and to the resetting of the 10-day clock due to unavailable counsel. The trial court examined the record of continuances and the good cause that had been found for each. The court explained that it did not have authority to review those earlier decisions but was placing the matter on the record for appellate review in the event of a conviction. Defendant was found guilty on April 18, 2013.

On May 7, 2013, defendant personally filed a handwritten motion to dismiss the charge against him on the ground that his right to a speedy trial had been violated. The trial court declined to rule on the pro per motion.

B. *The Law*

As relevant here, section 1382, subdivision (a) provides: "The court, unless good cause to the contrary is shown, shall order the action to be dismissed in the following cases: . . . [¶] (2) In a felony case, when a defendant is not brought to trial within 60 days of the defendant's arraignment on an . . . information. . . ." "Whether there is good cause for a delay beyond the 60-day limit depends on the circumstances of the particular case and is a determination within the discretion of the trial court. An appellate court will not disturb that determination absent a showing of abuse of discretion. [Citation.]" (*Hollis v. Superior Court* (1985) 165 Cal.App.3d 642, 645.)

"Defense counsel . . . ordinarily has authority to waive the statutory speedy trial rights of his or her client, even over the client's objection, as long as counsel is acting competently in the client's best interest. [Citations.] This is because statutory speedy

6

trial rights are not among those rights that are considered so fundamental that they are 'beyond counsel's primary control.' [Citations.] On the other hand, our concern for the client's right to the assistance of unconflicted counsel has led us to conclude that appointed defense counsel lacks authority to waive his or her client's statutory speedy trial rights when the client personally *objects* to a continuance and the sole reason for the continuance is defense counsel's obligation to another client. [Citations.]" (*Barsamyan v. Appellate Division of Superior Court* (2008) 44 Cal.4th 960, 969.) A "defendant raising the issue after conviction must prove not only unjustified delay in bringing his case to trial but also prejudice flowing from that delay." (*People v. Johnson* (1980) 26 Cal.3d 557, 574.)

C. *Contentions*

Defendant first asserts that Buchholz replaced Mendez because Mendez had desired to waive time for trial, which defendant adamantly opposed. The assertion is based upon defendant's oral conversation with Mendez that is not in the appellate record. Nothing in the record suggests that Mendez lacked good cause to seek to waive time or that her replacement with Buchholz somehow prejudiced defendant. In a *Marsden* hearing following the substitution of counsel, Buchholz explained that Mendez would be in trial in another case for the ensuing month and that the matter was reassigned to Buchholz in an attempt to honor defendant's wish for a speedy trial.

Defendant next notes that he disagreed with counsel Buchholz's February 21 request to trail the case and its continuance to March 4. Defendant claims that, evidently at the *Marsden* hearing, he made it clear that he "did not want the Public Defender's office to represent" him. The transcript of the hearing does not support this claim. Rather, at the hearing, defendant stated that he did not "have a problem with" Buchholz and simply wanted to indicate that he was "not agreeing with" counsel "waiving [his] time for this trial." Moreover, the trial court noted defendant's objection but found good

cause for the continuance based on counsel's unavailability and the time it would take for new counsel to prepare.

Defendant argues that he asked Buchholz *not* to continue trial for purposes of filing a suppression motion. But defendant does not claim that this (16 day) delay was unlawful or prejudicial. He does, however, claim the series of short continuances was prejudicial because he lost the testimony of a "key witness," Thomas Hope Jr. (identified in the reporter's transcript as Thomas *Hogue*), whom Officer Shippen had arrested at the same intersection where he had first encountered defendant. The arrest of Hope occurred shortly after the arrest of defendant. Defendant argues that Hope had appeared in court at the beginning of trial but ceased attending due to the delay in the trial date, but there is no evidence supporting this contention in the record. Defendant bears the burden of supporting his arguments on appeal, and he has made no effort to do so here. He has not shown that he was prejudiced by Hope's absence, or even that Hope's absence was the result of the continuances.

Defendant has not asserted *any* other claim of prejudice that resulted from the delay in bringing the case to trial. Therefore, even if defendant has shown unjustified delay, he has not shown resulting prejudice. (*People v. Johnson, supra,* 26 Cal.3d at p. 574.) Accordingly, this claim fails.

To the extent defendant claims that counsel rendered ineffective assistance by failing to move for dismissal of the action based on the trial delay caused by the continuances, we are not persuaded. " ' "[If] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' [Citations.] A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding. [Citations.]" (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.) In this case, trial counsel was not asked for any explanation as to why he had failed to file a

motion to dismiss and there is none provided to us. There could easily be a satisfactory explanation, such as counsel's determination that the continuances were justified by good cause and a motion to dismiss would be unwarranted, and would only result in further delaying defendant's trial after he had made clear he wanted a trial as soon as possible. Therefore, defendant has failed to show ineffective assistance of counsel.

## II

### *Suppression Motion*

On February 28, 2013, Buchholz filed a motion to suppress all evidence, including defendant's statement, which was obtained as a result of the warrantless search and seizure of defendant. In his supplemental brief, defendant argues that he did not want Buchholz to file the motion because the conversation Buchholz sought to suppress helped to prove defendant's innocence. Defendant reasons that Buchholz's filing of the motion against his wishes was prejudicial in that "the end result was a redacted statement taken out of context that reads out like [defendant] confessed to a crime that [he] did not commit."

The trial court denied Buchholz's motion to suppress, which alleged that the officers did not have reasonable suspicion to detain defendant. Nothing indicates any redaction occurred *as a result of this suppression motion*. Rather, it appears the redaction of defendant's statement was the result of a stipulation by counsel to remove a portion "in which the defendant is talking about his gang affiliation within prison and his probationary, parole status, things of that nature." Neither the record nor defendant indicates how this redacted portion would be exculpatory or how its exclusion would be inculpatory. Therefore, we cannot conclude any error or prejudice resulted from counsel Buchholz's pursuit of the motion to suppress evidence, or as a result of the redaction.

## III

### *Sufficiency of Evidence of Tattoo*

Defendant next claims "the evidence used by the state to convict [him] does not support the conviction." He challenges Shippen's identification of him based only on his tattoo. Specifically, defendant questions Shippen's ability to see the motorcyclist's neck tattoo during the high-speed chase at night time while the motorcyclist was wearing a helmet. We hold this observation when added to the other evidence presented at trial was sufficient to permit the jury to arrive at the conclusion it reached.

"On appeal, the test of legal sufficiency is whether there is substantial evidence, i.e., evidence from which a reasonable trier of fact could conclude that the prosecution sustained its burden of proof beyond a reasonable doubt. [Citations.] Evidence meeting this standard satisfies constitutional due process and reliability concerns. [Citations.] [¶] While the appellate court must determine that the supporting evidence is reasonable, inherently credible, and of solid value, the court must review the evidence in the light most favorable to the [judgment], and must presume every fact the jury could reasonably have deduced from the evidence. [Citations.] Issues of witness credibility are for the jury. [Citations.]" (*People v. Boyer* (2006) 38 Cal.4th 412, 479-480.) " ' " 'To warrant the rejection of the statements given by a witness who has been believed by the [trier of fact], there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions.' " ' [Citation.]" (*People v. Friend* (2009) 47 Cal.4th 1, 41, quoting *People v. Barnes* (1986) 42 Cal.3d 284, 306.)

Here, Shippen testified that although it was dark, the night was clear, and there was ambient lighting from the streetlights. The headlights on his patrol car were on. Shippen recalled the motorcyclist was wearing dark clothes, black and white shoes of a specific brand with a distinctive camouflage pattern, and a black helmet. He could also tell that the motorcyclist was a white male because Shippen could see the skin on the

10

back of the motorcyclist's neck below the motorcyclist's helmet and short hair. Shippen also saw, above the collar of the motorcyclist's shirt, a distinctive black ink tattoo that came up from the motorcyclist's shoulder blades toward the center of the neck. After defendant was detained by Crash and his handler, Shippen identified defendant as the motorcyclist. He testified defendant had the same build, was the same white male with short hair, had the same distinctive tattoo visible above the collar of his shirt, and was wearing the same distinctive shoes as the motorcyclist. No physical impossibility or falsity is apparent in this testimony; therefore, we will not reject it.

Moreover, we conclude this evidence, when added to Crash's tracking and identification of defendant based on stress and perspiration scents, the fact that defendant and the sleeping bag he was in were soaking wet when found, and defendant's statements to the police, is sufficient to support defendant's conviction.

IV

*Sentencing Enhancements*

In the supplemental brief, counsel contends the passage of Proposition 47 by the electorate in November 2014 operates to retroactively invalidate the sentencing enhancements imposed by the trial court pursuant to section 667.5, subdivision (b) for defendant's prior prison terms. We disagree.

Defendant was sentenced in the instant matter to six consecutive one-year enhancements based on his six prior prison terms. Defendant's most recent prison term resulted from his 2009 conviction for two counts of possession of a controlled substance. (Health & Saf. Code, §§ 11350, subd. (a) & 11377, subd. (a).) His next most recent prison term was imposed pursuant to his 2002 conviction for felony evasion. (Veh. Code, § 2800.2, subd. (a).) He was released on parole from that prison term on August 31, 2004. Defendant had one intervening felony conviction in 2006, for possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)), but he was not

11

sentenced to prison for that conviction. All other prison terms (1985, 1989, 1993, and 1998) preceded the 2002 term noted above.

Pursuant to section 667.5, subdivision (b), a convicted felon is subject to a one-year sentencing enhancement "for each prior separate prison term" served before committing the current offense. However, the enhancement does not apply for prison terms served "prior to a period of five years in which the defendant remained free of both the commission of an offense which results in a felony conviction, and prison custody." (§ 667.5, subd. (b).) Here, the only prison sentence within five years of the commission of the current offense is the sentence arising from defendant's 2009 conviction. Thus, if, as defendant claims, the enhancement for defendant's 2009 conviction and prison sentence is invalid, the other enhancements imposed pursuant to section 667.5, subdivision (b) would be "wash[ed] out" as well. (See *In re Preston* (2009) 176 Cal.App.4th 1109, 1115-1116 [" ' "washing out" ' " connotes " 'a crime-free cleansing period of rehabilitation after a defendant has had the opportunity to reflect upon the error of his or her ways' "].)

Possession of a controlled substance in violation of Health and Safety Code sections 11350 and 11377 was punishable as a felony at the time defendant committed and was convicted of those offenses and sentenced to prison for those offenses (in 2009), when he committed the current offense (in 2012), and when judgment was imposed (in 2013). (Stats. 2000, ch. 8, § 3; Stats. 2008, ch. 292, § 3; Stats. 2011, ch. 15, §§ 151, 171.) However, in November 2014, voters passed Proposition 47, also called the "Safe Neighborhoods and Schools Act." (Prop. 47, as approved by voters, Gen. Elec. (Nov. 4, 2014).) Among its provisions, Proposition 47 reclassified most violations of Health and Safety Code sections 11350 and 11377 as misdemeanors rather than felonies, subject to certain exceptions not applicable here. (Prop. 47, §§ 11, 13.)

The passage of Proposition 47 also created Penal Code section 1170.18, which provides for any defendant "currently serving a sentence for a conviction . . . of a felony

or felonies who would have been guilty of a misdemeanor under [Proposition 47] . . . had [it] been in effect at the time of the offense [to] petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing" under the statutory framework as amended by the passage of Proposition 47. (§ 1170.18, subd. (a).) If a defendant properly seeks recall and resentencing pursuant to section 1170.18, subdivision (a), the trial court must grant resentencing unless, in its discretion, it determines resentencing "would pose an unreasonable risk of danger to public safety." (§ 1170.18, subd. (b).) If, however, the person has already completed his or her sentence for a felony conviction that would have been a misdemeanor if Proposition 47 had been enacted at the time of the offense, the trial court *must* designate the felony conviction a misdemeanor upon the application of a person seeking such relief. (§ 1170.18, subds. (f), (g).)

On July 10, 2015, we issued an opinion rejecting defendant's claim that he was entitled to have *this* court resentence him by redesignating his 2009 felony convictions as misdemeanors. We reasoned in part as follows:

> "As a general rule, when a statute is amended 'to reduce the punishment for a particular criminal offense, we will assume, absent evidence to the contrary, that the [enacting body] intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date.' (*People v. Brown* (2012) 54 Cal.4th 314, 323, fn. omitted.) However, this rule 'is not implicated where the [enacting body] clearly signals its intent to make the amendment prospective, by the inclusion of either an express saving clause or its equivalent.' (*People v. Nasalga* (1996) 12 Cal.4th 784, 793, fn. omitted.)

> "We have previously concluded that a defendant was not entitled to retroactive application of Proposition 47 while the judgment from which he sought relief was on direct appeal. (*People v. Noyan* (2014) 232 Cal.App.4th 657, 672.) We concluded instead that such defendants were entitled to petition the *trial court* for a recall of sentence and resentencing pursuant to section 1170.18 once the judgment was final. (*Noyan*, at p. 672.) Similarly, section 1170.18, subdivision (f) provides an express remedy for defendants who, as in this case, have already completed serving a sentence for a felony conviction that would have been a

13

misdemeanor under Proposition 47." (*People v. Grayson* (July 10, 2015, C073803) [nonpub. opn.] slip opn. at pp. *13-*14.)

Because defendant had not yet employed the statutory mechanism to have the trial court reduce the convictions underlying his 2009 prison term, we did not reach his claim that that prison term could not be used to enhance his current sentence.

On October 14, 2015, our Supreme Court took judicial notice of documents showing that, *after* our initial decision in this matter, defendant obtained an order from the Sacramento County Superior Court reducing the two drug convictions in question to misdemeanors, granted review, and transferred the cause back to this court for reconsideration. We vacated submission of the cause, and obtained supplemental briefing, after granting each of the parties shortened extensions of time.

Now that defendant has followed the statutory mechanism to have the two drug convictions underlying his 2009 prison sentence reduced to misdemeanors pursuant to Proposition 47, we reach the merits of his claims. He claims first that the reduction means the 2009 prison term was no longer available to enhance his sentence pursuant to section 667.5, subdivision (b). He adds that, because the 2009 term cannot be used to enhance his sentence, all of the other prior prison term enhancements have been "washed out" as a matter of law.

We conclude the subsequent reduction of the underlying drug offenses to misdemeanors has no effect whatsoever on defendant's current sentence, which was imposed before the passage of Proposition 47.

Section 1170.18, subdivision (k) provides in part: "Any felony conviction that is recalled and resentenced under subdivision (b) or designated as a misdemeanor under subdivision (g) shall be considered a misdemeanor for all purposes . . . ." Defendant interprets the phrase "all purposes" to encompass invalidating the one-year enhancement already imposed for the 2009 prison term. However, *People v. Rivera* (2015) 233 Cal.App.4th 1085 held this emphasized language was not retroactive. *Rivera* reasoned

14

that our Supreme Court has held substantially similar language in section 17(b), which provides that after the court exercises its discretion to sentence a wobbler as a misdemeanor, and in the other circumstances specified in section 17(b), the phrase "for all purposes" does not apply retroactively. (*Rivera*, at pp. 1099-1100.) Applying *Rivera*, we agree that applying a subsequent, postsentencing reduction of defendant's 2009 offense so as to invalidate the already-imposed enhancement therefor would be an impermissible retroactive application of Proposition 47. (See also *People v. Park* (2013) 56 Cal.4th 782, 802 ["There is no dispute that . . . defendant would be subject to the section 667(a) enhancement had he committed and been convicted of the present crimes before the court reduced the earlier offense to a misdemeanor"].)

Defendant's reliance on *People v. Buycks*, formerly at (2015) 241 Cal.App.4th 519, is of no value because on January 20, 2016, the Supreme Court granted review (case No. S231765) and therefore the Court of Appeal opinion in *Buycks* may no longer be cited as authority. (See Cal. Rules of Court, rules 8.1105(e)(1), 8.1115(a).)

In light of our conclusion that the redesignation of the relevant drug convictions does not operate to invalidate the prior prison term enhancement for defendant's 2009 prison term, we need not address the People's fall-back position that *if* that enhancement were not available, the other prison term enhancements should not be deemed "washed out" because of certain parole revocations defendant suffered.

Lastly, we are not persuaded by defendant's contention that failing to apply Proposition 47 retroactively violates equal protection principles. Numerous courts have rejected similar equal protection challenges premised on "the timing of the effective date of a statute lessening the punishment for a particular offense." (*People v. Floyd* (2003) 31 Cal.4th 179, 188.) Indeed, legislative bodies " 'may specify that such statutes are prospective only, to assure that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written' " (*ibid.*) and may even deny retroactive application simply to avoid " 'remandments for additional sentencing

15

hearings' " (*id* at p. 190) for persons sentenced prior to the effective date of the measure. Accordingly, we conclude the prospective-only application of Proposition 47 does not violate equal protection principles.

## DISPOSITION

The judgment is affirmed.


                                                  /s/
                                       Duarte J.


We concur:


    /s/
Blease, Acting P. J.


    /s/
Butz, J.